*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0027P (6th Cir.)
File Name:  00a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

DEBBIE ROGERS BARNES,
LISA BEAN, JOHN EDWARD
ROGERS, Co-Executors of the
Estate of Edward Doyle
Rogers (98-5371); DIANE
BECKMANN, Individually and
as the Executrix of the Estate
of Leroy Beckmann
(98-5376),
      *Plaintiffs-Appellants,*

     *v.*

OWENS-CORNING FIBERGLAS
CORPORATION,
      *Defendant-Appellee.*

Nos. 98-5371/5376

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 92-00191; 90-00673—Edward H. Johnstone,
District Judge.

Argued:  June 18, 1999

Decided and Filed:  January 18, 2000

1

Before:  KRUPANSKY, RYAN, and SUHRHEINRICH,
                Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Kenneth L. Sales, SEGAL, SALES, STEWART,
CUTLER & TILLMAN, Louisville, Kentucky, for
Appellants.   John L. Dotson, O'BRYAN, BROWN &
TONER, Louisville, Kentucky, for Appellee.  **ON BRIEF:**
Kenneth L. Sales, Joseph D. Satterley, Kathleen M. Flynn,
SEGAL, SALES, STEWART, CUTLER & TILLMAN,
Louisville, Kentucky, Marc P. Weingarten, GREITZER &
LOCKS, Philadelphia, Pennsylvania, for Appellants. Donald
K. Brown, Jr., James P. Grohman, O'BRYAN, BROWN &
TONER, Louisville, Kentucky, for Appellee.

_____

**OPINION**
_____

RYAN, Circuit Judge.  In these asbestos exposure wrongful
death cases, the plaintiffs, Barnes and Beckmann, fiduciaries
for their respective decedents' estates, obtained separate jury
verdicts against Owens-Corning Fiberglas Corporation,
although in a consolidated trial.  The jury apportioned liability
against Owens-Corning at 2% in Barnes's case and 5% in
Beckmann's.  Both plaintiffs appeal and submit the following
three issues for our review:

- Whether the district court abused its discretion in
  denying the plaintiffs' motions for a new trial on the
  basis that the jury's apportionment of fault was against
  the great weight of the evidence;

- Whether the district court improperly instructed the
  jury with regard to allocation of fault; and

Owens-Corning that the complaints introduced in evidence are relevant to causation and sufficiently probative to survive Rule 403 scrutiny, although the district court's decision not to exclude nonparty manufacturers had some potential for confusing the jury. We do not believe the jury was confused given the paucity of the evidence of Owens-Corning's fault found in these cases and given further its decision to allocate 40% liability in the *Becht* case. In *Williams*, 790 F.2d 552, another toxic tort case involving toxic chemical exposure rather than asbestos exposure, this court reversed the district court's decision not to allow into evidence a prior complaint claiming the injuries alleged were caused by a different defendant. There is no principled reason to treat differently the allegations here, that other defendants were jointly liable. Moreover, in *Williams*, we rejected a similar argument, namely, that the complaints were merely to preserve the ability to discover the proper defendant: "The plaintiff's argument that the statements were made merely to preserve legal rights may be quite persuasive, but should have been made to the jury." *Id.* at 556.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment entered by the district court in each case.

- Whether the district court erred in allowing Owens-Corning to read portions of the plaintiffs' complaints into evidence.

For the following reasons, we affirm the district court's judgment in each case.

## I.

The decedents in these two cases, Leroy Beckmann and Edward D. Rogers, worked with asbestos for many years. Beckmann worked for Anaconda Aluminum in Louisville, Kentucky, from 1963 to 1973 as a general laborer and a maintenance machinist, and at Brown & Williamson from 1973 to 1982 as a maintenance worker. Rogers worked in the whiskey filtration department at Barton Brands Distillery in Kentucky from 1959 to 1990. Both men died of mesothelioma, an asbestos-related form of lung cancer. The plaintiffs are the personal representatives for their respective decedent's estates. For the sake of clarity, we refer to the "Barnes" case hereafter by the name of the decedent, "Rogers."

The Beckmann estate sued a total of 18 manufacturers and distributors of asbestos-containing products, while the Rogers estate sued a total of 13. One manufacturer and distributor, Johns-Manville, was joined as a third-party defendant in both cases. Owens-Corning was the only defendant who appeared at trial to defend, the plaintiffs having settled or dismissed their claims against each of the other defendants.

At trial, the district court, over the plaintiffs' objections, permitted Owens-Corning to introduce in evidence the complaints filed by each plaintiff and read the names of all the original defendants to the jury. The plaintiffs now claim error. At the close of the case, the court instructed the jury to apportion liability pursuant to Ky. Rev. Stat. Ann. § 411.182, which requires, "[i]n all tort actions . . . involving fault of more than one party," apportionment of liability among all "part[ies] to the action, including third-party defendants and

persons . . . released" by "[a] release, covenant not to sue, or similar agreement." In the court's instructions to the jury regarding apportionment of liability, the jurors were told to indicate the percentages of the total fault in three categories, as follows: (1) the percentage of fault attributable to the decedents; (2) the percentage of fault attributable to Owens-Corning; and (3) the percentage of fault attributable to "others which may include," and then the court named and the verdict forms listed 13 asbestos manufacturers in the Rogers case and 15 in the Beckmann case.

The plaintiffs claim that one of the 15 in the Beckmann case, Anchor Packing Co., was voluntarily dismissed, but we find nothing in the record indicating the dismissal of Anchor Packing. Contrary to the plaintiffs' assertions, a company called Foster Wheeler never appeared on either verdict form, and we find nothing in the briefs or the record indicating that Foster Wheeler and Anchor Packing are the same company.

Two other companies, Garlock, Inc. and Keene Building Products Corporation, were never defendants in the Beckmann case, although they were defendants in the Rogers case, and did not enter into any settlement agreement with the Beckmann plaintiff. In Rogers, two of the 13 corporations listed in the "others" category, Celotex Corporation and Eagle-Picher Industries, Inc., were never defendants in the case, although they were defendants in Beckmann, and did not enter into any settlement agreement with the Rogers plaintiff.

The jury awarded the plaintiffs substantial damages in both cases, $1.76 million in Beckmann and $942,000 in Rogers. However, the jury apportioned only 5% of the liability to Owens-Corning in Beckmann and only 2% in Rogers. In a third consolidated case that is the subject of a separate appeal to this court, *Becht v. Owens-Corning*, No. 98-5387, the jury awarded approximately $1.4 million in damages and apportioned 40% of the liability to Owens-Corning.

In a diversity case, the admissibility of evidence is a procedural matter governed by federal law. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988). "Pleadings in a prior case may be used as evidentiary admissions." *Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir. 1986). The Ninth Circuit gave the following analysis of the nature of factual assertions contained in pleadings:

> "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." *Ferguson v. Neighborhood Housing Services*, 780 F.2d 549, 551 (6th Cir.1986) (citations omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *See White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

*American Title*, 861 F.2d at 226. Of course, under Fed. R. Evid. 801(d)(2)(A), a party's own statement that is offered against him is "not hearsay." Such statements are admissible if they are relevant under Fed. R. Evid. 401 and their probative value is not substantially outweighed by any prejudicial effect under Fed. R. Evid. 403.

As a general matter, complaints are admissible under Rule 801(d)(2)(a) and specifically under the case law set forth in *American Title*. While the naming of the other defendants is not necessarily an "admission" of the other defendants' liability, *see, e.g.*, *Whatley*, 861 F.2d at 839, the complaints admit the existence of potential claims against the named defendants that may be relevant to causation. We agree with

products. The jury was entitled to believe this evidence, and accepting it would not be unreasonable.

Second, on our review of the evidence of record, as described in part III.A. above, we find that the jury's verdicts as they related to Owens-Corning were not unreasonable. Indeed, had the jury found Owens-Corning 0% liable in both cases, we would not be free to disturb such a finding on this record.

Finally, we note that the plaintiffs have failed to identify any portion of the record indicating that they timely objected to the jury instructions pursuant to Fed. R. Civ. P. 51. Thus, any error would have to be sufficiently egregious to satisfy the plain-error rule. *Adam*, 130 F.3d at 226, and we find none in either case.

Reading the trial court's instructions as a whole, we conclude that they adequately informed the jury of the relevant considerations and provided a basis for its decisions. Although the district court erroneously included parties in the instructions against whom the evidence was lacking, the instructions, when viewed as a whole, were not confusing, misleading, or prejudicial in terms of the jury's ultimate task of assessing Owens-Corning's liability. Thus, we conclude that any error in the manner in which the court instructed the jury was harmless.

## C.

Finally, we turn to the issue whether the district court erred in allowing Owens-Corning to read portions of the plaintiffs' complaints into evidence. This court generally reviews a defendant's challenge to the district court's decision to admit evidence for abuse of discretion. *See, e.g.*, *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). The parties have not directly presented the issue as a hearsay problem that, which, since it would involve application of Fed. R. Evid. 801, would call for a *de novo* review. *See United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996).

The Beckmann and Rogers plaintiffs filed motions for a new trial on the apportionment issue, arguing that the verdicts were against the great weight of the evidence; that the court's instructions improperly provided for allocation of fault to parties against whom no evidence of fault was presented; and that the court erred in admitting the plaintiffs' complaints into evidence. The district court denied the motions, finding that the jury instructions were correct and that the apportionment was "within the realm of reason."

## II.

During the relevant time period, Owens-Corning manufactured and distributed an asbestos-based insulation product known as Kaylo that was either installed or removed in areas in which each plaintiff worked. In challenging the jury's verdicts, the plaintiffs argue that the evidence revealed that the decedents were exposed to or worked with Kaylo to a far greater extent than is reflected by the jury's verdicts. Thus, we must burden our opinion with a summary of the facts in evidence relating to each decedent's exposure to asbestos, generally, and Owens-Corning's product, Kaylo, specifically.

### A.  Beckmann Exposure Evidence

Two witnesses, Lowell Collard and Ronald Spainhour, testified as to the presence of Kaylo at Anaconda Aluminum. Collard testified that he was installing Kaylo at Anaconda Aluminum in the mid-1960s, and that it was very dusty. Collard did not know Beckmann and did not know whether Beckmann was in the part of the plant where asbestos products were used. Spainhour worked directly with Beckmann and testified that he could not identify any Owens-Corning asbestos-containing products that were in use during Beckmann's tenure in the 1960s. He did describe some insulation that he and Beckmann used in rebuilding industrial furnaces, but none of the asbestos products he identified was

an Owens-Corning product. He did not see Kaylo at Anaconda Aluminum.

Several witnesses testified regarding Beckmann's time at Brown & Williamson. David Parker testified that he saw insulation workers taking asbestos-based insulation out of Owens-Corning boxes and that Owens-Corning was the only name he ever saw on any of the boxes. Although Parker came to know Beckmann later, he never knew him or saw him at Brown & Williamson, and he had no knowledge regarding Beckmann's exposure or lack thereof to asbestos, although he *assumed* Beckmann was exposed because of the nature of the work he did. Although Parker testified that he saw the name Owens-Corning on insulation boxes, he also testified that he never saw Kaylo at Brown & Williamson. He also testified that the plaintiffs' counsel suggested the name Kaylo and Owens-Corning to him, but did not mention other manufacturers.

Charles Fleischer testified that Kaylo was in use at Brown & Williamson and that it was very dusty. Fleischer also identified other asbestos products in use at Brown & Williamson that were manufactured by other defendants. However, the plaintiffs admit that Fleischer worked at Brown & Williamson from 1959-1964 and 1968-1971, whereas Beckmann did not begin working there until 1973.

Collard testified that he installed asbestos at Brown & Williamson from 1956-1962, and that the materials were usually ordered from Owens-Corning. However, he also identified other manufacturers whose products were used at Brown & Williamson—manufacturers who were also defendants. The plaintiffs' brief incorrectly states that Collard worked at Brown & Williamson in the 1970s when Beckmann was there; he did not.

Robert Kinsella testified that his company installed Kaylo at job sites listed in an exhibit he was handed at his video deposition. He said the list was "pretty much" accurate. The

circumstantial nature of the evidence against Owens-Corning, the jury could reasonably have inferred that the exposure to Owens-Corning products was sufficiently slight to warrant only a nominal apportionment of liability.

In Rogers, the decedent answered interrogatories and gave a deposition before his death from mesothelioma. In his answers to Owens-Corning's interrogatories, Rogers stated that "[d]uring the course of [his] career, he was exposed to asbestos containing products manufactured by the defendants." In his responses to Owens-Corning's requests for admissions, Rogers specifically admitted exposure to asbestos-containing products manufactured by A.P. Greene, Garlock, Johns-Manville, W.R. Grace, Owens-Illinois, and Pittsburgh Corning, all of whom were settling defendants appearing on the verdict form. Rogers also admitted exposure to asbestos-containing products manufactured by nonsettling nonparty Celotex, who was incorrectly included in the verdict form. Rogers also specifically admitted as to each of these defendants that "such exposure was a substantial factor in causing his alleged asbestos-related injury." These responses were introduced at trial and read to the jury. Moreover, Rogers testified unequivocally that he worked on a daily basis with raw asbestos, which the evidence indicated Owens-Corning never manufactured. He identified Owens-Illinois as the manufacturer that he recalled, while also referring to a company called "Earthal" that is not involved in the case. Rogers identified Celotex products and a product he referred to as "Gold Bond," but never mentioned Kaylo or Owens-Corning in his testimony. The jury saw Rogers's video deposition at trial. Finally, the plaintiffs' main witness in Rogers, William Clark, was unable to differentiate between Owens-Illinois and Owens-Corning in his testimony about Rogers's alleged exposure.

In both cases, the defendant presented evidence that Owens-Corning had warning labels on its Kaylo product as early as 1966, and that dust counts performed on Kaylo showed it to be safe in comparison to its competitors'

*injury and death.*  If you so find, you will determine the percentage of total fault attributable to the exposure to the other product or products.

*You will determine from the evidence* what percentage of total fault for the decedent's injury was attributable to:

1.  The decedent's failure to use ordinary care for his own safety;
2.  Defendant's asbestos-containing products; and
3.  Asbestos-containing products manufactured or distributed by other companies.

In determining the percentage of fault, you shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damage claimed.

(Emphasis added.)   We presume the jury followed the instructions as they were given and "*determine[d] from the evidence*" whether the decedents were exposed to other companies' products, the extent to which such exposure caused the decedents' injuries, and the extent of the total fault attributable to companies other than Owens-Corning.

In Beckmann, witness Collard identified asbestos products in use at Brown & Williamson that were manufactured by Johns-Manville, Pittsburgh Corning, and Philip Carey Manufacturing Co.   Owens-Corning presented expert testimony that indicated that the Pittsburgh Corning and Philip Carey products could not be used safely, while Kaylo could be used safely.   Moreover, in response to discovery requests, Beckmann admitted at least possible exposure to products manufactured by Johns-Manville, Owens-Illinois, Pittsburgh Corning, and W.R. Grace.   Finally, none of the evidence submitted in Beckmann supported a direct link between Beckmann's presence at Anaconda or Brown & Williamson and the presence of Kaylo in the same area as Beckmann worked.       Because of the indirect and

list included Brown & Williamson, but Kinsella did not provide any specific dates or times when Kaylo may have been in use.

Charles DuPont testified that he worked with Beckmann at Brown & Williamson and that they usually worked the second or third shift, whereas the insulators worked the first shift and cleaned up after themselves before going off duty.  DuPont testified that he and Beckmann occasionally removed small portions of insulation, but he could not identify the name or manufacturer.

### B.  Rogers Exposure Evidence

Rogers testified in a video deposition before his death.  He testified that he was "pretty sure" he had been exposed to asbestos pads made by Celotex or Owens-Illinois Glass Co. Rogers clearly testified that he was exposed to "raw asbestos" routinely while using it as a filtrate.  Rogers identified the manufacturer as Owens-Illinois or Earthal.  Another witness, Jerry Helser, testified that Owens-Corning never manufactured or distributed raw asbestos.  Rogers also testified that other employees used "Gold Bond" insulation and an unidentified "mud" product that may have contained asbestos.  Rogers stated that the "Gold Bond" was in a four-foot by eight-foot *sheet*.  However, according to Kinsella, Kaylo came in a two-inch by 12-inch by 36-inch *block*. Rogers did not testify that he was exposed to Kaylo or otherwise attribute exposure to Owens-Corning in his video deposition.

William Clark worked at Barton Brands from 1958 through the time of trial, and he worked directly with Rogers.  He testified that raw asbestos was routinely used at Barton Brands. He saw Rogers working with asbestos insulation, and he identified Owens-Corning and Owens-Illinois as the manufacturers. He recalled that *sheet* insulation was ground up for use in filtration when it was not used up in insulation activity and that Rogers was extensively exposed because he

used the filtration asbestos almost every day. However, on cross-examination, Clark was unable to differentiate between Owens-Corning and Owens-Illinois. He also testified that the sheet insulation was used at Barton Brands only until the early 1960s.

In his video deposition, Rogers was unable to state how often extra insulation was ground up for filtration, and he could specifically identify only one product as Owens-Corning—a small filter pad that emitted no dust when it was installed and was removed wet, that is, dustless. This was the only product Rogers associated with Owens-Corning specifically, and it was the only Owens-Corning product on the job site.

### III.

### A.

The plaintiffs argue that the district court erred in denying their motions for a new trial on the basis that the jury's apportionment of liability was against the great weight of the evidence. The district court ruled, without providing findings of fact or conclusions of law, that "the jury's apportionment of liability was within the realm of reason."

### 1.

This court reviews a district court's decision to deny a motion for a new trial for an abuse of discretion. *See Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). We will reverse such a decision only if we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.*

A court may set aside a verdict and grant a new trial when it "'is of the opinion that the verdict is against the clear weight of the evidence,'" *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) (citation omitted); however, new trials are not to be granted on the grounds that the verdict was against the

that a reasonable juror could conclude that apportionment of some liability to that defendant is justified, thereby satisfying the requirement that "the evidence is sufficient to submit the issue of liability," and ensuring consistency with the underlying premise of the comparative fault system to provide "'liability for any particular injury in direct proportion to fault.'" *Floyd*, 758 S.W.2d at 432 (citation omitted).

None of this is simple, but our ultimate resolution of this issue is further complicated by the fact that the district court, apparently in response to the plaintiffs' objections to the defendants' proposed instructions, grouped the corporations other than Owens-Corning together in a category designated "others which may include." In its verdict forms, the jury allocated 0% of fault to the decedents and 5% and 2% to Owens-Corning in Beckmann and Rogers, respectively, but made no numerical allocation whatever to any specific composition the court had listed under the category of "others." Instead, the jury simply allocated 95% and 98%, respectively, of fault, in gross, to the entire category of "others." Under these circumstances, it is impossible for this court to determine whether the jury actually apportioned liability to any *particular* defendant in the "others" category, and the question becomes whether the evidence was sufficient for the jury to allocate the relevant share of liability to any one or more of them. This is a concern, but we decline to overturn the jury's verdicts for three reasons.

First, there was some evidence in the record in each of the cases from which the jury could reasonably have determined that parties other than Owens-Corning, including those plainly erroneously included in the verdict forms, were primarily at fault. In both cases, the proofs focused on exposure. The district court instructed the jury as follows in each case:

> *You will determine from the evidence* whether the decedent was exposed to one or more similar products manufactured or distributed by a company other than the defendant *which was a substantial factor in causing his*

to the defendants, it would doubtless have been error to include them in the apportionment instructions.

*Id.* at 228 n.6 (emphasis added).  A district court would err if it instructed a jury to apportion liability to a third-party defendant where there had been *a previous determination* that dismissal was appropriate because the evidence was insufficient to support a finding of liability.

We recognize that no Kentucky case has directly addressed the question whether fault may be apportioned to a settling or dismissed party where the evidence is insufficient to support a finding of liability, absent a previous determination. However, we are confident, in light of the statute's requirement that the jury consider both conduct and causation in determining fault, the *Floyd* and *Kevin Tucker & Associates* courts' references to the sufficiency of the evidence, and this court's discussion of dismissed third-party defendants in *Adam*, that Kentucky courts would conclude that apportionment of fault to defendants where the evidence is insufficient to support liability is error. *Accord Whatley v. Armstrong World Indus., Inc.*, 861 F.2d 837, 839 (5th Cir. 1988).  We conclude that the Kentucky cases assume the point, and that the statute clearly requires sufficient evidence to support a finding of fault as a prerequisite to apportionment under subsection 2.

Section 411.182 applies in "tort actions . . . involving fault of more than one party."  The jury must apportion fault considering evidence of conduct and causation.  If the evidence is such that no reasonable juror could determine a given party is at fault, logic dictates that the jury should not be instructed to apportion fault to that party.  Under section 411.182 a district court errs to the extent that it instructs a jury to apportion liability to parties where the evidence adduced at trial is insufficient as a matter of law to support a finding of liability against those parties.  In order to successfully obtain an apportionment instruction as to a person covered by section 411.182, the party seeking the instruction must show

weight of the evidence "unless that verdict was unreasonable," *Holmes v. City of Massillon*, 78 F.3d 1041, 1047 (6th Cir. 1996).  Thus, if a reasonable juror could reach the challenged verdict, a new trial is improper.  *See id.* at 1048.  "'[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" *Duncan*, 377 F.2d at 52 (citation omitted).  Kentucky courts follow a substantially similar policy of reluctance to overturn the jury's verdict.  *See, e.g.*, *Spears v. Burchett*, 289 S.W.2d 731, 735 (Ky. Ct. App. 1956).

### 2.

We think it is clear that a reasonable juror could have apportioned liability as these jurors did.  Kentucky courts adjudicate products liability cases according to principles of strict liability.  *See, e.g.*, *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 433 (Ky. 1980).  Thus, a defendant's "fault" is determined according to the unsafe or unreasonable condition of the product.  *See id.*  The dispositive issue presented to the jury was whether exposure to Owens-Corning's asbestos products caused the decedents' mesothelioma, and the jury apparently found the evidence in these cases too weak to support an inference of more than minimal exposure to any Owens-Corning product. Significantly, in *Becht*, which was also consolidated with these cases for trial but appealed and decided separately, the jury apportioned 40% liability to Owens-Corning, indicating its ability to evaluate the evidence in each case independently for the purpose of assessing the level of exposure to Owens-Corning's products.

Several witnesses testified in Beckmann, and their evidence was equivocal as to whether Beckmann was exposed to Kaylo or any Owens-Corning asbestos product.  The evidence was highly circumstantial, inviting the jury to infer a link between the presence of Kaylo at Beckmann's places of employment

without direct testimony of exposure. The causal connection between Beckmann's mesothelioma and exposure to Owens-Corning products, if it was established at all, was highly speculative. In Rogers, although the jury awarded minimal damages against Owens-Corning, apparently based upon the decedent's extensive exposure to raw asbestos or ground up *sheet* insulation and the notable absence of other evidence linking exposure to Owens-Corning's products, the evidence was such that a finding of little or no liability on Owens-Corning's part would have been entirely reasonable.

The plaintiffs' contention that there was *no evidence* that the other manufacturers' products were at fault is inaccurate. In Beckmann, Johns-Manville, a third-party defendant, and Eagle Picher, an original defendant named in the Beckmann complaint, were among the manufacturers identified in the testimony. Moreover, in discovery, Beckmann admitted at least possible exposure to products manufactured by Johns-Manville, Owens-Illinois, W.R. Grace & Co., and Pittsburgh Corning Corporation. In Rogers, witnesses identified Owens-Illinois as the main manufacturer of products at Brown & Williamson, and Rogers admitted extensive exposure to a raw asbestos product that Owens-Corning did not manufacture. Rogers never mentioned Owens-Corning or Kaylo in his testimony, and the jury could have reasonably concluded that the *sheet* insulation identified as the product ground for filtration was something other than Kaylo, which came in *block* form. Additionally, in discovery, Rogers admitted exposure to products manufactured by Johns-Manville, Garlock, Celotex, W.R. Grace, A.P. Greene Refractories Co., Owens-Illinois, and Pittsburgh Corning.

In *Strickland v. Owens-Corning Fiberglas Corp.*, 142 F.3d 353, 356 (6th Cir. 1998), the jury allocated 70% of the fault to Owens-Corning. We vacated the jury's allocation of fault and remanded the case with instructions that Owens-Corning's liability be capped at 50% because there was no "basis for distinguishing [Owens-Corning's] conduct as more blameworthy" than Owens-Illinois's conduct where Owens-

if there is never an "active assertion of a claim" against the third-party, liability cannot be apportioned to him. . . . Of course, if the third-party plaintiff's claim is dismissed, the plaintiff may ordinarily amend his complaint to make the ex-third-party defendant a defendant.

842 S.W.2d at 874 n.5 (citation omitted). We found it implicit in this footnote that "if there has *ever* been an active assertion of a claim against the third party—if the third party has been impleaded by the original defendant, in other words—liability *can* be apportioned to the third-party defendant notwithstanding a dismissal prior to trial." *Adam*, 130 F.3d at 228. In support, we referenced the following language as explicitly making the point:

"*[I]f the evidence at trial shows* that [the general contractor] caused some portion of the City's damages, *Tucker will be entitled to an apportionment instruction.* [The general contractor] is entitled to be dismissed, however, because they cannot be liable to Tucker under any circumstances."

*Id.* at 229 (quoting *Kevin Tucker & Assocs.*, 842 S.W.2d at 875) (some emphasis added). Thus, we concluded in *Adam* that the district court's dismissal of two third-party defendants, Med-Tech and Musick, before trial, "*on grounds independent of their liability* to the plaintiffs [did not] preclude[] any apportionment of fault to them." *Id.* at 227 (emphasis added).

The converse of the above statement would also apply: If a third-party defendant were dismissed before trial *on the ground that it could not be held legally liable to the plaintiffs* for their injuries, apportionment of fault to that third-party defendant would be inappropriate. Indeed, in *Adam* we observed:

If Med-Tech and Musick had been properly dismissed *on the ground that there was no evidence to support a finding that they were liable to the plaintiffs*, as opposed

In determining the percentages of fault, the trier of fact shall consider both the *nature of the conduct of each party at fault* and the *extent of the causal relation between the conduct and the damages claimed.*

(Emphasis added.) This language presumes that, before apportioning liability to any party, the jury will find that party "at fault" in terms of both aspects of the fault attributed to it. In this case, the two aspects are (1) the party's *manufacture and/or distribution* of an unsafe product, and (2) *causation*, that is, at a minimum, exposure to the unsafe product. Consistent with this understanding of the rule, in *Floyd*, the court explained:

If there is an active assertion of a claim against joint tortfeasors, *and the evidence is sufficient to submit the issue of liability to [sic] each*, an apportionment instruction is required whether or not each of the tortfeasors is a party-defendant at the time of trial.

758 S.W.2d at 432 (emphasis added).

In *Kevin Tucker & Associates*, the Kentucky Court of Appeals affirmed the trial court's judgment dismissing a third-party defendant impleaded on a contribution theory because the apportionment statute, by establishing a standard whereby "each tortfeasor's liability is limited by the extent of his fault," 842 S.W.2d at 874, precluded a finding that the third-party defendant could be liable to the defendant "for all or part of the plaintiff's claim," Ky. Civ. R. 14. We looked to that decision in *Adam* to determine that the dismissal of third-party defendants *does not* "preclude their being included in the jury instructions on apportionment," 130 F.3d at 228, relying on the following language in a footnote in *Kevin Tucker & Associates*:

[T]hird-party defendants may often be entitled to dismissal on the grounds that they cannot be liable to the third-party plaintiff. . . . This does not mean that defendants should not assert these third-party claims; for

Corning was distributing a product manufactured by Owens-Illinois. *Id. Strickland* adds little to our analysis here, where there was some basis in the evidence for the jury's conclusion. Ironically, the plaintiffs in this case argue that the jury's verdicts were unreasonable, while the plaintiff in *Becht*, represented by the same counsel, argues that the same jury reasonably concluded that Owens-Corning was 40% at fault. We agree with Owens-Corning that the evidence of exposure to Kaylo in *Becht* was "less circumstantial" than the evidence in Beckmann and Rogers, and we believe that the jury's allocation of significantly more fault to Owens-Corning on stronger evidence in *Becht* demonstrates that it acted rationally in evaluating the evidence in each case. Thus, we conclude that the district court did not abuse its discretion by refusing to grant a new trial on the basis that the jury's verdicts in Beckmann and Rogers were within the realm of reason.

**B.**

The plaintiffs also argue that the district court's jury instructions on the allocation of fault erroneously included parties about whom little or no evidence of fault was submitted, and some of whom were never named as defendants in the complaints.

**1.**

Federal jurisdiction in this case is based on diversity of citizenship. *See* 28 U.S.C. § 1332. In a diversity case, "federal law governs our standard of review for determining whether a jury instruction is prejudicial." *Gafford v. General Elec. Co.*, 997 F.2d 150, 166 (6th Cir. 1993) (internal quotation marks and citations omitted). Our duty is to "review jury instructions as a whole to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986). We will reverse a jury's verdict on the

basis of improper instructions only when the instructions, when viewed as a whole, are confusing, misleading, and prejudicial. Federal courts generally presume the jury will follow the instructions correctly as given. We will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless. *See United States v. Toney*, 161 F.3d 404, 412-13 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1347 (1999).

**2.**

Ky. Rev. Stat. Ann. § 411.182 governs apportionment of fault among multiple tortfeasors in Kentucky:

(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and

[T]he comparative negligence statute and *Hilen* both preclude the adjudication of liability of persons or legal entities who are neither before the court nor are settling tort-feasors. . . . KRS 411.182 merely addresses the procedure for apportioning liability among parties before the court or who have settled or been released. It does not direct or authorize the adjudication of fault of absent, potential litigators.

*Copass v. Monroe County Med. Found., Inc.*, 900 S.W.2d 617, 619 (Ky. Ct. App. 1995).

The Kentucky case law interpreting and applying section 411.182 uniformly rejects the inclusion of nonsettling nonparties in the jury's apportionment instructions. Consequently, the district court erred when it included Garlock and Keene in the "others" category in the Beckmann case, because they were never parties and did not buy their peace from the Beckmann estate. Likewise, the district court erred when it included Celotex and Eagle-Picher in the "others" category in the Rogers case, because they too were never parties and did not buy their peace from Rogers or his estate. However, for reasons explained below, we will not reverse the jury's verdicts on the basis of these errors alone.

In its instructions to the jury, the district court included several other corporations in the "others" category, each of whom were named parties who had been dismissed or had otherwise settled their claims with the plaintiffs. The plaintiffs contend that doing so was error because no evidence was introduced of these manufacturers' fault and there was not sufficient evidence to establish that exposure to their products caused the decedents' mesothelioma. There is little direct Kentucky authority on the question whether, assuming a lack of evidence to support a finding of liability against a particular party, it is error to permit a fact finder to consider apportionment of fault against such party, even when there clearly had been an active assertion of a claim against him. However, Ky. Rev. Stat. Ann. § 411.182(2) states:

adopt a theory of implied agreement between Betty and Ralph by Betty's failure to sue Ralph. While we will liberally construe the statute, we believe Williams' construction is beyond the bounds of liberality.

*Id.* (emphasis added). Thus, under *Floyd*, *Dix*, and *Bass*, section 411.182 apportionment encompasses named parties, including third-party defendants and parties dismissed for whatever reason, and settling parties or settling nonparties. It does not include nonsettling nonparties. *See Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc.*, 842 S.W.2d 873, 874 (Ky. Ct. App. 1992); *see also Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 227-28 (6th Cir. 1997).

The Kentucky Court of Appeals adopted this reading of the statute two years later in *Baker v. Webb*, 883 S.W.2d 898 (Ky. Ct. App. 1994). There, in connection with an automobile collision causing injury to the plaintiff, the trial court instructed the jury as to the legal duties of the defendant, the plaintiff, and the plaintiff's husband, who was not a party but was driving one of the vehicles when the plaintiff was injured, and included the plaintiff's husband in the apportionment instruction. The court of appeals reversed the jury's apportionment of 40% liability to the plaintiff's husband, concluding that section 411.182 does not apply to nonsettling nonparties:

[T]he thrust of KRS 411.182, considered in its entirety, limits allocation of fault to those who actively assert claims, offensively or defensively, as parties in the litigation or who have settled by release or agreement. When the statute states that the trier-of-fact shall consider the conduct of "each party at fault," such phrase means those parties complying with the statute as named parties to the litigation and those who have settled prior to litigation, not the world at large.

*Id.* at 900. Likewise, a year later, the court of appeals stated:

shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

With the exception of Garlock, Inc. and Keene Building Products Corporation in Beckmann, and Celotex Corporation and Eagle-Picher Industries, Inc. in Rogers, each of the corporations named in the jury instructions in both cases was a party to the action, a dismissed defendant, or a settling tortfeasor. In both cases, the plaintiffs argue that *all* of the defendants included in the "others" category were improper because Owens-Corning produced *no evidence* that these parties were at fault or that exposure to their products caused the decedents' mesothelioma and that the evidence of record was insufficient to support a finding of liability against any of them.

Section 411.182 and the relevant Kentucky case law decided both before and after the enactment of the statute indicate that the court is required to instruct the jury to apportion liability to the parties to the case, including plaintiffs, defendants, and third-party defendants, and to parties who have settled or otherwise "bought their peace" by an agreement described in subsection 4. We begin our analysis of section 411.182 with a brief discussion of those cases decided before the statute was enacted in order to place the statute in its proper historical context.

In *Orr v. Coleman*, 455 S.W.2d 59, 61 (Ky. Ct. App. 1970), the Kentucky Court of Appeals held that Ky. Rev. Stat. § 454.040, which granted juries the discretion either to apportion fault among joint tortfeasors or to impose joint damages, allowed apportionment of fault to *any named defendant who settled before trial*. The Kentucky Supreme Court subsequently extended *Orr* in *Daulton v. Reed*, 538 S.W.2d 306, 308 (Ky. 1976), and *required* apportionment of fault to defendants against whom claims had been dismissed "whatever may have been the reason," so long as there was an "active assertion of a claim." *Id.* Thus, under *Orr* and *Daulton*, the jury's task of apportioning liability extended to settling named defendants and dismissed defendants. Consistent with *Daulton*, the Supreme Court of Kentucky, in *Prudential Life Insurance Co. v. Moody*, 696 S.W.2d 503, 504 (Ky. 1985), held that apportionment of 50% of the fault to a party ultimately adjudicated immune under the statute of limitations was appropriate.

In *Floyd v. Carlisle Construction Co.*, 758 S.W.2d 430 (Ky. 1988), which was decided contemporaneously with the Kentucky Legislature's enactment of section 411.182, the Kentucky Supreme Court reviewed the case law and held that a nonparty tortfeasor who settled his claims with the plaintiff, or was dismissed, was to be treated as a party for apportionment purposes, although apportionment would not impose any liability on nonparties. The *Floyd* court explained the significance of its earlier cases on apportionment:

> The basis for these holdings is the active assertion of a claim against joint tortfeasors. If there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to [sic] each, an apportionment instruction is required whether or not each of the tortfeasors is a party-defendant at the time of trial.

> A tortfeasor who is not actually a defendant is construed to be one for purposes of apportionment if he

has settled the claim against him or if he was named as a defendant in the plaintiff's complaint even though the complaint was subsequently dismissed as to him.

*Id.* at 432. And so, apportionment of fault to "a joint tortfeasor with whom the plaintiff ha[d] settled but who was not named as a party defendant by the plaintiff and whom the defendant did not name as a third-party defendant," *id.* at 430, was appropriate. The *Floyd* court noted that the case arose after *Hilen v. Hays*, 673 S.W.2d 713 (Ky. 1984), in which the court abandoned contributory negligence and adopted comparative negligence in the name of "simple fairness [which] required[] 'liability for any particular injury in direct proportion to fault.'" *Floyd*, 758 S.W.2d at 432 (citation omitted). *Floyd*, although it did not apply section 411.182, is the only Kentucky apportionment case discussed in the parties' briefs on appeal.

After the enactment of section 411.182, the Kentucky Supreme Court, in *Dix & Associates Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24, 29 (Ky. 1990), acknowledged that the statute expressly requires apportionment of third-party defendants' liability. However, the Kentucky Court of Appeals later declined to construe section 411.182 to include nonparties, as it might have done, considering the *Floyd* court's reference to requiring an apportionment instruction "whether or not each of the tortfeasors is a party-defendant at the time of trial." *Floyd*, 758 S.W.2d at 432. In *Bass v. Williams*, 839 S.W.2d 559 (Ky. Ct. App. 1992), the court of appeals concluded that "the trial court erred when it instructed the jury to consider the duties of [nonparty] Ralph Bass in [apportioning liability]." *Id.* at 564.

> KRS 411.182 applies to *persons named as parties*, regardless of how named *and those persons who bought their peace* from the litigation by way of releases or agreements. These persons affected by the statute are explicitly denominated, and Ralph Bass does not fit into any of the described classifications. Williams urges us to