**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0029n.06
Filed: January 9, 2008

**Case No. 05-2248**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| THOMAS LEE FREEMAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER and GILMAN, Circuit Judges; VARLAN[*], District Judge.

**ALICE M. BATCHELDER, Circuit Judge.** Defendant Thomas Freeman appeals his conviction for transporting in interstate commerce a 16-year-old girl with the intent that the minor engage in unlawful sexual conduct. Freeman argues that the district court's final jury instruction on venue was plainly erroneous, and that, even if the final venue instruction was not erroneous, the manner in which the court arrived at this final instruction was so confusing that we should reverse his conviction. Because we conclude that the district court's venue instruction was not plainly erroneous, we AFFIRM Freeman's conviction.

## I. BACKGROUND

On October 26, 2004, a federal grand jury indicted Freeman and Virginia Frey, Freeman's

_____

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

girlfriend, on charges of kidnaping a 16-year-old minor female, "K.C.," in violation of 18 U.S.C. § 1201, and transporting K.C. across state lines with the intent that K.C. engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). Frey pled guilty to the interstate transportation count and agreed to testify against Freeman. Freeman proceeded to trial on both counts.

At trial, the jury heard testimony from K.C., Frey, and Freeman. The government's case established that Frey and K.C., who is Frey's younger cousin, engaged in a sexual relationship. K.C. wanted to run away from home and be with Frey. The two agreed that K.C. would leave home and travel for a period of time with Freeman, who drove trucks for a living. According to Frey, Freeman planned to have sex with K.C. while K.C. traveled with him. K.C. ended up traveling with Freeman in his truck for several weeks and the two engaged in sexual activity throughout the trip. K.C. testified that she had sex with Freeman in Oklahoma, Arizona, and Missouri before she finally contacted her family and the police. In both Arizona and Missouri, Freeman committed a criminal offense by engaging in sexual activity with the 16-year-old K.C.

At the conclusion of the government's case-in-chief, Freeman moved for acquittal on both counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion. Freeman testified that he never had any plan to engage K.C. in sexual activity — "I didn't even know she would be having sex with me during the trip." He admitted that he and Frey helped K.C. run away from home; that he transported K.C. across a number of state lines; and that he and K.C. had consensual sex in Arizona, and later in Missouri. In essence, Freeman "testified that his initial intent was to rescue [K.C.] from what he believed was an abusive home environment and that it was not until he and [K.C.] arrived in Arizona that they engaged in consensual sex."

Freeman and the government disagreed about how the jury should be instructed as to venue.

Freeman argued that in order for venue to be proper in the Western District of Michigan, the government had to establish that Freeman transported K.C. through the Western District *and* that, while in the Western District, he had the intent that K.C. engage in illicit sexual conduct. The government, however, argued that venue was proper in the Western District if the transportation occurred in the Western District and that at some point before the end of the interstate journey Freeman formed the intent that K.C. engage in illicit sexual conduct; the government argued that the law did not require that he form this intent in the Western District.

The court agreed with the government and so instructed the jury. Before releasing the jury to deliberate, however, the court altered the defense's theory-of-the-case instruction and removed language indicating that the interstate transportation count required that Freeman form the requisite intent in Michigan. The jury then began deliberations. The following Monday, after having reviewed the relevant case law, the court interrupted jury deliberations to give new venue instructions: namely, that to establish venue, the government must show that Freeman had a plan to have sex with K.C. sometime during the trip and that the plan and the transportation of K.C. for the purposes of that sex either started in the Western District or was partially carried out by passing though the Western District. However, before permitting the jury to continue deliberating, the trial judge once again met with trial counsel, still troubled by the venue instructions. The court then provided the jury with the final instruction on venue.

Although Freeman had objected to earlier versions of the instruction, he did not object to this final instruction, which provided:

> In this case, as to Count 1, kidnapping, it is not enough that the government prove that the defendant Thomas Freeman engaged in a kidnapping wherein the inveiglement started in the State of Michigan. Nor is it sufficient that the plan to

3

kidnap [K.C.] — if you find there was such a plan — started in the State of Michigan. Rather, the government must prove by a preponderance of the evidence that the inveiglement of [K.C.] started in the Western District of Michigan or the transportation was through the Western District of Michigan after the plan was made.

The only evidence that we have of any acts in the Western District of Michigan are certain telephone calls between Virginia Frey and [K.C.] while [K.C.] was in Merritt, Michigan; that Virginia Frey picked [K.C.] up from her home in Merritt, Michigan; and that the defendant drove with Virginia Frey and [K.C.] through the Lansing, Michigan, area to Ft. Wayne, Indiana.

If you find these telephone calls and/or picking up [K.C.] from Merritt or driving through Lansing, Michigan, was part of the kidnapping-inveiglement plot which included Thomas Freeman, then you can find that the inveiglement and/or interstate transportation occurred in part, at least, in the Western District of Michigan.

Likewise, in order for you to find the defendant guilty of Count 2, the interstate transportation count, the government must prove by a preponderance of the evidence that the defendant transported [K.C.] in interstate commerce with the intent to have sex with [K.C.] and that part of this transportation was through the Western District of Michigan, from Merritt to Saginaw, and/or through Lansing.

. . . .

In this case, the government has the burden of proof that the crime started or was partially carried out in the Western District of Michigan, which includes Merritt, Michigan, and also Lansing, Michigan.

. . . .

You must still find all of the other elements of the crimes charged — Count 1, inveiglement, transportation across state lines, and holding for sexual gratification; Count 2, transportation across state lines with intent to have illegal sex in Arizona and Missouri — beyond a reasonable doubt.

The only thing that can be found by a preponderance of the evidence is the district in which the crimes began or were partially, at least, carried out. The only evidence we have putting the alleged crimes within the Western District of Michigan is the testimony of [K.C.] and Virginia Frey regarding what happened in Merritt, Michigan, and the traveling from Merritt to Saginaw and/or through the Lansing, Michigan, area.

4

It is the government's theory regarding where the alleged crimes began that Virginia Frey and Thomas Freeman were working together to inveigle [K.C.] to travel across state lines with Thomas Freeman to be used as a sex object for Thomas Freeman and that this inveiglement started with the telephone calls between Virginia Frey and [K.C.]. And Virginia Frey's helping [K.C.] run away from her home was part of the continuous scheme. According to the government, part of the travel included driving from Merritt to Saginaw and through the Lansing area on the way to Ft. Wayne, Indiana. Therefore, for these and other reasons already argued, the government requests that you find Thomas Freeman guilty of both charges.

It is the defendant's theory regarding where the alleged crime began that Thomas Freeman did not participate in any plan to induce [K.C.] to leave home in Merritt, Michigan, or kidnap her by inveiglement. And Thomas Freeman had no intent to have sex with [K.C.] outside of Michigan until he and [K.C.] developed a consensual relationship several days after they were alone in the truck together. Thomas Freeman maintains the only contact he had with the Western District of Michigan was when he briefly traveled through the Lansing area from Saginaw to Ft. Wayne, Indiana. Therefore, for these and other reasons already argued, Thomas Freeman requests that you find him not guilty on both charges.

Within 35 minutes of receiving the final venue instruction, the jury acquitted Freeman of kidnaping K.C. but convicted him of the interstate transportation count. Freeman filed a timely appeal, challenging his conviction on the basis of the venue instruction only.

## II. ANALYSIS

Because Freeman's counsel failed to object to the final venue instruction, we review the district court's instruction for plain error. *See* FED. R. CRIM. P. 30(d); *United States v. Blood*, 435 F.3d 612, 625 (6th Cir. 2006) ("If no objection is made, or the objection is not sufficiently specific, we review the claimed defect in the instruction only for plain error."). "In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (quoting *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994)).

The pertinent statute provides:

[t]ransportation with intent to engage in criminal sexual activity. A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a).

On appeal, Freeman argues that venue for his § 2423(a) conviction is appropriate in the Western District only if the government establishes, by a preponderance of the evidence, that Freeman "formed the requisite intent (to engage in illegal sex) prior to leaving Michigan," and that the court's venue instruction did not reflect this intent requirement. The government counters that Freeman "could be convicted of transporting a minor across state lines with the intent to commit a sex crime, even if he had not formed the intent at the time he left Michigan, so long as he formed the necessary intent prior to the end of his interstate trip."

There is sparse case law on this issue, and the case law that does exist is less than clear. Regardless of whether Freeman or the government has the better argument here, we conclude that the final venue instruction, taken as a whole, was not "so clearly erroneous as to likely produce a grave miscarriage of justice." Of particular import, the instruction states that "the government must prove by a preponderance of the evidence that *the defendant transported [K.C.] in interstate commerce with the intent to have sex with [K.C.]* and that part of *this* transportation was through the Western District of Michigan, from Merritt to Saginaw, and/or through Lansing"; "[i]t is the government's theory regarding where the *alleged crimes began* that Virginia Frey and Thomas Freeman were working together to inveigle [K.C.] *to travel across state lines with Thomas Freeman*

6

*to be used as a sex object for Thomas Freeman*" and that part of the travel involved the Western District of Michigan; and "[i]t is the defendant's theory regarding where the *alleged crime began* . . . [that] Thomas Freeman had *no intent to have sex with [K.C.] outside of Michigan* until he and [K.C.] developed a consensual relationship several days after they were alone in the truck together." (Emphasis added). Taken as whole, the final venue instruction favors Freeman. The parties' theory-of-the-case instructions were premised on their respective views of whether Freeman had formed the intent before he left Michigan. Critically, if even one member of the jury believed that Freeman "had no intent to have sex with [K.C.] outside of Michigan until he and [K.C.] developed a consensual relationship several days after they were alone in the truck together," then the jury would not have convicted Freeman.

And even though the district court gave a number of instructions, not all of which were consistent with each other, the manner in which the court arrived at the final instruction does not mandate reversal. First, neither party did a stellar job of providing the court with useful case law or analysis on the issue of venue. Second, we will not vacate Freeman's conviction just because the district court attempted to correct its own errors to ensure that it properly instructed the jury. Third, we presume that the jury followed the instruction given. *See*, *e.g.*, *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000). Here, the jury asked the district court a number of questions relating to the kidnaping count, but asked no questions relating to the interstate transportation count. We, therefore, have no basis for concluding that the jury did not understand the venue instruction, as Freeman argues.

### III. CONCLUSION

Accordingly, for the foregoing reasons, we **AFFIRM** Freeman's conviction.

7