Stephen M. KENDALL, Plaintiff–Appellant,

v.

CITY OF CANFIELD, OHIO, Defendant–Appellee.

No. 01–3871.

United States Court of Appeals, Sixth Circuit.

Sept. 8, 2003.

James H. Banks, Nina M. Najjar, Dublin, OH, for Plaintiff–Appellant.

Marshall D. Buck, Comstock, Springer & Wilson, Youngstown, OH, for Defendant–Appellee.

Before NORRIS, DAUGHTREY, and ROGERS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff Stephen Kendall filed this § 1983 civil rights suit against his former employer, the City of Canfield, Ohio, after he was terminated from his position as a police officer. Although he raised several claims in his complaint, only a First Amendment freedom-of-association allegation survived pre-trial motions. A jury ultimately returned a defense verdict. We find no reversible error and affirm.

### I.

This case offers a cautionary tale of the perils that accompany an office romance. In partially granting summary judgment to the City, the district court offered the

following sketch of events that led to this suit:

Kendall was hired as a dispatcher for the City of Canfield's police department in August of 1998. Kendall then applied for and was promoted to the position of part-time police officer in May of 1999 and became a full-time officer in July 1999. During his employment, Kendall was commended for both his work ethic and his performance.

While serving as a full-time police officer, Kendall entered into a relationship with a fellow officer at the department, Valorie Hohmann. Ms. Hohmann was hired approximately two weeks after Kendall became a full-time police officer, and they began dating in August of 1999. By the first week in September, they were dating exclusively. It was a romantic relationship and, at the time of Kendall's deposition in December of 2000,[1] they were still romantically involved.

.      .      .      .      .

Before dating Ms. Hohmann, Kendall stated that everything was going fine, and he had every reason to believe he was doing a good job. After his supervisors learned of their relationship, however, Kendall states that everything went downhill. Kendall's superiors had asked Ms. Hohmann out numerous times and, when they found Kendall was dating her, Kendall states they retaliated against him by putting his actions under a microscope.

In December 1999, Sergeant Colucci gave plaintiff a written reprimand that listed four violations. The first of these occurred in September and concerned "questioning a supervisor's decision." The second involved an incident in December when plaintiff stopped a car for speeding even

though the driver was not going more than eleven miles above the speed limit; plaintiff allegedly made the stop because he knew that the driver had no driving privileges. The next day plaintiff pulled over another driver who was not going more than eleven miles above the speed limit, thus committing a third violation of departmental policy. And, fourth, plaintiff was asked to rewrite a report because he had failed to explain why he had probable cause to conduct a canine search and make an arrest in a drug case.

In denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, the district court provided further insight into plaintiff's February 2000 termination:

On December 18, 1999, Sgt. Magnuson issued a memo to all officers, which stated, *inter alia,* that the number one perceived problem within the community was speeding....

.      .      .      .      .

Plaintiff received three supervisory counselings on the same day the memo went out—one of which involved an accident that occurred over one month prior to the counseling. Then, the very next day, Plaintiff was counseled for stopping a vehicle for speeding at a rate of only ten miles per hour over the posted speed limit. Another supervisory counsel occurred on December 22, 1999 in response to Plaintiff's intention to issue a written warning for overnight parking.

.      .      .      .      .

In January of 2000, Sgts. Magnuson and Colucci prepared an evaluation of Plaintiff, which referenced four driving infractions by Plaintiff within the month of January, of which only one resulted in a citation. The comment was made in

---

**1.** Plaintiff had been fired the previous February.

this evaluation that Plaintiff was a good driver, but not necessarily a safe driver. Also in January of 2000, Sgt. Ruiz conducted mobile video recorder compliance checks on Plaintiff. Sgt. Ruiz noted ten instances in which Plaintiff did not turn on his microphone. Another report on Plaintiff was submitted to Sgt. Magnuson on January 30, 2000 from Sgt. Colucci.

Finally, on February 3, 2000, Sgts. Magnuson, Colucci, Ruiz and Badzak recommended Plaintiff be terminated, despite the fact that he was only six months into his probationary period. Plaintiff was handed a termination letter on February 4, 2000.

As already mentioned, the case was tried to a jury on the First Amendment freedom of association claim. The jury was given four interrogatories. The first read:

> Do you find that Plaintiff has proved, by a preponderance of the evidence, that his association with Officer Hohmann was a substantial or motivating factor in Defendant's decision to terminate Plaintiff's employment?

The jury answered, "Yes." The second interrogatory provided as follows:

> Do you find that Defendant has proved, by a preponderance of the evidence, that it would have terminated Plaintiff's employment even if Plaintiff had not had an association with Officer Hohmann?

Because the jury also answered this question affirmatively, it did not respond to the third and fourth interrogatories, which concerned proximate cause and damages. Despite its responses, however, the jury also sent this note to the judge and asked him to read it to the parties: "We have found for the Defendant but would still like to urge some amount of compensatory damages to the Plaintiff?" After reading the note in open court, the district court dismissed the jury and entered judgment for defendant.

Plaintiff filed a motion for judgment notwithstanding the verdict or for a new trial. After receiving supplemental briefs from the parties, the district court reaffirmed the judgment for defendant. The court addressed the note from the jury in these terms: "If the Court's instruction to the jury resulted in confusion, which led to this note, the Court is of the opinion that the situation should be remedied with a new trial. If, however, the jury used the note as a means of letting Plaintiff know they felt bad for him, no injustice has resulted." The court went on to discuss a number of topics, including the necessity of giving an explicit jury instruction regarding pretext, which represents plaintiff's primary assignment of error on appeal. While the district court expressed concern that it had not given such an instruction, it nevertheless denied plaintiff's motion for a new trial.

## II.

With the preceding by way of background, we turn to plaintiff's assignments of error.

### 1. Failure to Give the Jury an Instruction on Pretext

Plaintiff contends that the jury instructions as given, while not technically incorrect, resulted in confusion because they failed to include any explicit discussion of pretext.

Typically, we review the district court's jury instructions de novo. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir.1998). Jury instructions are to be reviewed as a whole rather than piecemeal, in order to determine " 'whether they adequately inform the jury of the relevant

considerations and provide a basis in law for aiding the jury in reaching its decision.'" *Hostetler v. Consol. Rail Corp.,* 123 F.3d 387, 393 (6th Cir.1997) (quoting *O–So Detroit, Inc. v. Home Ins. Co.,* 973 F.2d 498, 502 (6th Cir.1992)). "A judgment may be reversed if the instructions viewed as a whole, were confusing, misleading and prejudicial." *Id.*

■ However, "[n]o party may assign as error the giving or *the failure to give* an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection." Fed.R.Civ.P. 51 (emphasis added). In this case, plaintiff did not propose the jury instruction regarding pretext that he now contends should have been given by the district court. Under such circumstances, we review only for plain error. *Reynolds v. Green,* 184 F.3d 589, 594 (6th Cir.1999). "Plain error is an 'obvious and prejudicial' error that requires action by the reviewing court 'in the interests of justice.'" *Id.* (quoting *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987)). "An instruction is not plainly erroneous unless there was 'an egregious error, one that directly leads to a miscarriage of justice.'" *United States v. Yang,* 281 F.3d 534, 551 (6th Cir.2002) (quoting *United States v. King,* 169 F.3d 1035, 1040 (6th Cir.1999)).

In a case holding that the First Amendment did not permit the Jaycees to refuse to admit women, the Supreme Court recognized that the First Amendment protects the right "to enter into and maintain certain intimate human relationships [which] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). This

court has accordingly found that colorable claims are stated by employees who are fired because they are married to a particular person, where the employer was dissatisfied with. or politically hostile to, the spouse. *Adkins v. Bd. of Educ.,* 982 F.2d 952 (6th Cir.1993); *Sowards v. Loudon County,* 203 F.3d 426 (6th Cir.2000). As we explained in *Sowards,* in order for a plaintiff to establish a claim that he was retaliated against for engaging in constitutionally protected activity, he must prove the following: that he was engaged in protected activity; that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and, finally, that the adverse action was motivated at least in part by plaintiff's protected conduct. *Sowards* at 431 (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

With respect to the issue before us, the substance of the claim is less important than the burden-shifting that accompanies its proof:

In brief, this analysis focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity. *See Mattox v. City of Forest Park,* 183 F.3d 515, 520–21 (6th Cir. 1999). If the plaintiff meets her burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *See Kreuzer v. Brown,* 128 F.3d 359, 363 (6th Cir.1997), cert. denied, 523 U.S. 1121, 118 S.Ct. 1802, 140 L.Ed.2d 941 (1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

*Sowards* at 431 (footnote omitted). The district court explained burden-shifting to the jury as follows:

> The burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claim by a preponderance of the evidence. If the proof should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence in this case, the jury should find for defendant.
>
> To establish by a preponderance of the evidence means to prove that something is more likely so than not so....

The district court then went on to explain the elements of the claim before turning to what it described as the City's "alternative defense":

> If you find that Plaintiff has established by a preponderance of the evidence that his association with Officer Hohmann was a substantial or motivating factor in his termination by defendant, then you shall consider the alternative defense advanced by defendant. Defendant has the burden of proof as to this alternative defense. By this defense, Defendant City of Canfield contends, and must prove by a preponderance of the evidence, that the employment decision made on February 4, 2000 to terminate plaintiff in his position as a police officer with the City of Canfield would have been made even if plaintiff had not been involved in his association with Officer Hohmann.

The court referred to several aspects of Ohio law that govern the powers of police officers so that the jury could better decide whether the City's alleged grounds for termination were valid or, by implication, pretextual. Finally, it instructed the jury about proximate cause before presenting the interrogatories described earlier.

Plaintiff does not contend that these instructions were legally incorrect.

Rather, he argues that an explicit instruction concerning pretext, which he did not request, could have avoided any jury confusion. We disagree. Viewed as a whole, the instructions correctly informed the jury about the elements of the First Amendment claim, the manner in which the burden of proof shifts during trial, and the defenses available to the City. This circuit has never *required* an explicit instruction about pretext and we decline to do so now. Plaintiffs are, of course, free to request such an instruction from the trial court, which in turn may determine that such an instruction is warranted under the circumstances of the particular case before it. However, where, as here, plaintiff has not asked for the instruction, a district court need not formulate one on its own initiative. In short, we detect no error whatsoever in the instructions as given, let alone the kind of "egregious error" required for plaintiff to show plain error.

### 2. Did Jury Confusion Require a New Trial?

We review a district court's denial of a motion for a new trial for an abuse of discretion. *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000). A new trial should not be granted if a reasonable juror could reach the challenged verdict. *Id.* at 821. Moreover, the court is "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.1967)).

Plaintiff's primary argument focuses on the note sent by the jury to the district court. In his view, the jury's desire to award him damages despite its

verdict indicates that it was confused and that a new trial is warranted. However, as the district court recognized, "If ... the jury used the note as a means of letting Plaintiff know they felt bad for him, no injustice has resulted." Memorandum Opinion and Order, October 31, 2001 at 5. In this case, the district court polled the jury to confirm each member's answer to the interrogatories before observing that they had "given me a note that they would ask me to read to the parties." The note itself begins. "We have found for the defendant." which supports an inference that the jury felt sympathy for plaintiff, even though it recognized that he had not sufficiently proved his case. In short, we conclude that the evidence was sufficient for a reasonable juror to find for defendant and, consequently, that the district court acted within its discretion in denying the motion for a new trial.

*3. Remaining Issues*

The final assignments of error raised by plaintiff do not require detailed discussion. He contends that the district court should have exercised its power of judicial oversight to correct the injustice allegedly manifested by the jury's verdict note to the court. As already explained, legally sufficient evidence existed to support the jury's verdict. Consequently, any such oversight was unnecessary.

Finally, plaintiff contends that defendant should have been precluded from introducing reasons for his termination that were not provided to him at the time he was fired. Plaintiff cites no authority in support of this rule, however, and we know of none. Rather, plaintiff's counsel was free to point out to the jurors that certain of the justifications presented by the City came to light after the termination decision was made and that these reasons should therefore be discounted.

In short, this challenge goes to the weight of the evidence, not to its admissibility.

### III.

The judgment of the district court is **affirmed.**