**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 02-1378

BESNIK KURSHUMI,

Petitioner,

v.

JOHN ASHCROFT, United States Attorney General,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, <u>Chief Judge</u>,

Torruella and Howard, <u>Circuit Judges</u>.

---

    <u>William E. Graves, Jr.</u> with whom <u>Kerry E. Doyle</u> and <u>Graves & Doyle</u> were on brief, for petitioner.
    <u>Frances M. McLaughlin</u>, Attorney, Office of Immigration Litigation, with whom <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Norah Ascoli Schwarz</u>, Senior Litigation Counsel, Office of Immigration Litigation and <u>Danielle Franco</u>, Attorney, Office of Immigration Litigation, were on brief, for respondent.

---

June 25, 2004

---

**Per Curiam**.  Petitioner Besnik Kurshumi appeals from a decision of the Board of Immigration Appeals ("BIA" or "Board") affirming the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal.  In a written opinion, the BIA concluded that Kurshumi had failed to establish either past persecution or a well-founded fear of future persecution.  Having carefully reviewed the record and the petition for review, we affirm.

**I.**

Kurshumi, a native and citizen of Albania, entered the United States illegally on or about July 13, 1994.  Deportation proceedings were initiated when the Immigration and Naturalization Service ("INS")[1] served Kurshumi with an order to show cause charging deportability under former section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B) (1998), for entering the country without inspection.  Kurshumi conceded deportability but applied for asylum and withholding of removal.

Kurshumi asserted in his application that he could not return to Albania because, inter alia, he and his wife had been subjected to "constant and intense surveillance" (including mail

---

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice.  Its enforcement functions were transferred to the Department of Homeland Security.  See Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002).  Because the events at issue here predate that reorganization, we refer to the INS in this opinion.

-2-

screening), allegedly on account of their actions (and the actions of his wife's family) in speaking out against both the former Communist regime in Albania and the current Albanian government. Kurshumi also claimed that members of his wife's family had been subjected to various forms of mistreatment by the then in-power Communist government.[2]  In an addendum to his application, Kurshumi alleged that, because he was not a member of the Communist party in Albania when that party was in power, he was prohibited from pursuing a career as an airplane pilot; instead, he was sent to work for a government-run high school as a physical-education instructor and was later fired "since he had not been a member of the Communist party."

At a hearing before the IJ, in addition to testifying about the events described in his application, Kurshumi testified, in pertinent part, as follows: that, until the early 1990s, he lived unharmed as a physical-education instructor; that, in 1991, he (along with 10,000 other demonstrators) participated in a political demonstration against the former Communist government;

---

[2]In particular, Kurshumi stated, <u>inter alia</u>, that his wife's grandfather had been sentenced to death in the 1940s due to his anti-Communist views but that this sentence eventually was commuted to fifteen years imprisonment; that his wife's father had been sentenced to "hard labor in construction" sometime in the 1970s or 80s; that his wife's uncle had been sentenced to nine-years imprisonment after criticizing Communist ideals; and that his wife's entire family had been subjected to random interrogations, beatings, and mental abuse during the Communist era (which since has ended).

that he also spoke out against the new government by writing a letter to parliament; that, in response to this letter, he was invited to discuss his concerns with the Vice President of the Defense Commission and two deputies; that, in fact, he did meet with these individuals; that, after this meeting, he was invited to a second meeting (this time with parliament); that, on the day of the second meeting, he was brought to the defense minister and was asked who would attend the meeting; that he criticized this minister for over an hour; that another meeting was set up between himself and the president of parliament; that, prior to this meeting, he received a note informing him that he was being transferred from the government-run high school to a new job as commander of a military team (and, on cross-examination, that the government-run high school from which he had been transferred had closed down just three months after his transfer); that, because of health problems, he did not timely report to his new job; that, upon eventually reporting to the job, he was fired for having failed to report; that, around the same time, Albanian police officers secured a warrant to search -- and did search -- his home (and the homes of approximately twenty-five others); and that he thereafter wrote a letter to the newspaper, which was published and which criticized the search of his home.

In addition to the above testimony, Kurshumi's wife corroborated her husband's testimony and provided additional

-4-

information about the events relating to her family that were described in Kurshumi's application. She also testified that, on the advice of her father, she never spoke out publicly against the Communist government and that she never participated politically until the demonstration in 1991; that she herself had no problems with the Albanian government following the search of the house in 1992; and that she had at least two sisters living peacefully in Albania. Finally, there was testimony of a general nature from an expert on European history and totalitarian governments.

In an oral decision, the IJ denied Kurshumi's applications for asylum and withholding of removal. Kurshumi sought review from the BIA, which subsequently issued a two-page per curiam opinion affirming the IJ's decision. This appeal followed.

## II.

We are presented with three arguments on appeal: (1) "the Board erred when it failed to provide a clear administrative finding"; (2) "the Board erred when it found that [Kurshumi] had not established a well-founded fear of [future] persecution and [when it found] that he had [not] suffered past persecution"; and (3) "the Board erred in failing to consider current country conditions in light of [Kurshumi's] past persecution." None are convincing.

First, contrary to Kurshumi's assertion, the BIA articulated a clear rationale for its decision to affirm. The order states that "[the BIA] agree[s] with the Immigration Judge's decision that [Kurshumi] failed to establish past persecution or a well-founded fear or clear probability of persecution in Albania based on one of the five protected statutory grounds . . ., especially in light of changed country conditions." In addition to adopting expressly the reasoning of the IJ ("[T]he [IJ's] decision will be affirmed for the reasons stated therein . . . ."), the BIA addressed Kurshumi's principal concerns as follows: (1) "[t]o the extent that [certain factual] findings [of the IJ] may be erroneous, we find them to be harmless, inasmuch as we find the [IJ's] legal conclusion is correct . . . [because,] even if the government transferred [Kurshumi] because of his political opinion, such act does not rise to the level of persecution"; (2) "[Kurshumi] has provided no convincing argument that <u>he</u> has ever suffered persecution in the past or would likely suffer persecution in the future because of his relationship to his wife's family." The BIA is not required to discuss each and every piece of evidence or write an exegesis on every contention. See <u>Morales</u> v. <u>INS</u>, 208 F.3d 323, 328 (1st Cir. 2000).

Second, we agree with the BIA that Kurshumi has failed to meet his burden of proving eligibility for asylum and <u>a fortiori</u> has failed to meet his burden relating to withholding of removal.

See Mabikas v. INS, 358 F.3d 145, 149 (1st Cir. 2004) ("The applicant bears the burden of establishing eligibility for asylum by proving either past persecution or a well-founded fear of future persecution. The law requires an asylum seeker to demonstrate that he is a refugee . . . by adducing evidence that such past persecution or fear of future persecution is due to one of . . . five grounds . . ., namely, race, religion, nationality, membership in a particular social group, or political opinion." (citations and quotation marks omitted)); Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003) ("Because the . . . standard for withholding deportation is more stringent than that for asylum, a petitioner unable to satisfy the asylum standard fails, a fortiori, to satisfy the former." (citation omitted)). "[W]e review a denial of a petition for asylum by the BIA under a substantial evidence standard. We will not reverse the BIA's decision unless the record evidence would compel a reasonable factfinder to make a contrary determination." Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001) (citation and quotation marks omitted).

The BIA had ample evidence from which to reject Kurshumi's asylum claim, and we certainly are not "compelled" to conclude that Kurshumi was persecuted in the past or has a well-founded fear of being persecuted in the future on account of his political opinions or membership in any particular social group. Although Kurshumi was transferred from his job as a physical-

education instructor to a new post from which he subsequently was fired, both events easily are explained by other-than-protected circumstances (i.e., the school closure and a failure to report, respectively). Even assuming a nexus between these events and one of the five protected grounds -- an inference that might well be debated -- such events normally do not rise to the level at which a reasonable factfinder would be compelled to find past persecution and do not do so here. See, e.g., Nelson v. INS, 232 F.3d 258, 264 (1st Cir. 2000) (concluding that a reasonable factfinder would not have been compelled to find past persecution where petitioner was subjected to "three episodes of solitary confinement of less than 72 hours, each accompanied by abuse . . . [as well as] regular harassment in the form of periodic surveillance, threatening phone calls, occasional stops and searches, and visits to her place of work"). We therefore conclude that there was substantial evidence for the BIA to find that Kurshumi "has not demonstrated that he suffered past persecution or [that he] has a well-founded fear of [future] persecution."

Finally, Kurshumi contends that the BIA erred when it failed to consider evidence that "little has changed in Albania following the collapse of the Communist regime." Kurshumi premises this argument on the assertion that he established past persecution and thus was entitled to a rebuttable presumption regarding a well-founded fear of future persecution. See Fergiste v. INS, 138 F.3d

14, 18 (1st Cir. 1998) ("A finding of past persecution triggers a regulatory presumption that the applicant has a well-founded fear of future persecution, provisionally establishing the applicant's refugee status and eligibility for asylum. Where the Board finds that past persecution has been established, the INS has the burden of proving . . . that since the time the persecution occurred conditions in the applicant's country of nationality have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return." (citations and quotation marks omitted)). As Kurshumi has failed to establish past persecution, see supra, we need not entertain this argument.

**Affirmed**.[3]

---

[3]We note that our disposition of this appeal does not in any way affect Kurshumi's derivative-asylee status, which (on March 30, 2004) was granted to him by reason of his wife's asylee status. See 8 U.S.C. § 1158(b)(3) ("A spouse . . . of an alien who is granted asylum [under subsection (b)] may, if not otherwise eligible for asylum under this section, be granted the same status as the alien . . . ."). Kurshumi's asylee status, of course, remains dependent upon his wife's asylee status. See id. § 1158(c)(2) ("Asylum granted under subsection (b) of this section does not convey a right to remain permanently in the United States, and may be terminated . . . [for one of several reasons]."); see also 8 C.F.R. § 208.24(d) ("Termination of derivative status. The termination of asylum status for a person who was the principal applicant shall result in termination of the asylum status of a spouse or child whose status was based on the asylum application of the principal.").