NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0297n.06
Filed: April 18, 2005

No. 03-3072

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MANISH SINGH KHANNA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PETITION FOR REVIEW FROM THE** |
| JOHN ASHCROFT, United States Attorney | ) | **BOARD OF IMMIGRATION APPEALS** |
| General, | ) | **NO. A 77 374 817** |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: COLE and GIBBONS, Circuit Judges, and SCHWARZER, District Judge.*

JULIA SMITH GIBBONS, Circuit Judge. Petitioner Manish Singh Khanna, a citizen of India, appeals the denial of asylum and withholding of removal. The immigration judge (IJ) determined that (1) Khanna was not credible nor was his testimony sufficiently corroborated, and (2) even if he was credible, he was not eligible for asylum because the conditions in his country had substantially changed since he fled in 1993. The Board of Immigration Appeals (BIA) affirmed the IJ's decision on the ground that Khanna had failed to meet his burden of proof because he failed to adequately corroborate his claim. For the following reasons, we affirm the BIA's decision.

---

*The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

**I.**

Manish Singh Khanna, a native and citizen of India, entered the United States on December 10, 1997 without authorization. His wife, Priti Khanna, entered the United States on October 13, 1998, also without authorization. The Immigration and Naturalization Service (INS) commenced removal proceedings against Khanna, alleging that he was remaining in the country illegally in violation of § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i). Khanna conceded removability at a hearing before the IJ, but filed an application seeking asylum, withholding of deportation, and relief under the United Nations Convention Against Torture. The initial application was filed on or about May 5, 1998, but an additional application was submitted on or about October 21, 1998.[1]

In Khanna's applications for asylum, he states that he is a practicing Sikh from Rajpura in the state of Punjab. He claims that he joined the All India Sikh Student Federation (AISSF) in 1992 or 1993 while in college. Khanna alleges that due to this participation in the AISSF, the police raided his home in September of 1993 and he was arrested. Khanna alleges that he, along with three other individuals, was held by the police for three to four days, during which he was tortured and beaten. The applications assert that Khanna's father was informed that Khanna was going to be killed in a "fake encounter," but that Khanna's father was able to pay 80,000 rupees to enable Khanna to escape. When Khanna and the three other individuals were being transported to the

---

[1]Khanna also filed a third asylum application on December 15, 1999, which was intended to supplement his other applications.

encounter in a jeep, Khanna was given a "signal" and jumped from the jeep. The applications assert that thereafter, Khanna's father was arrested and held for five days, where he was beaten and tortured.

As a result of this incident, Khanna relocated to Bombay for two to three years where he worked in a confectionary shop. In June 1996, Khanna alleges that he spotted a police jeep outside the shop, and therefore he avoided work for a couple of days. When he returned, his manager told him that the police were looking for him and that it was no longer "good" for him to live there. As a result, he fled to his uncle's house in Nothick. Khanna's father allegedly arranged for Khanna to be taken to the United States for 60,000 rupees. Khanna's applications state that he thereafter stayed in Bangkok for four months, in Brazil for two weeks and in Mexico overnight before arriving in the United States. However, in Khanna's October 21, 1998 application, he states that he did not travel through any other country on his way to the United States. In the earlier application for asylum, Khanna states that he did return to India after he left, while the later application states that he never returned after leaving.

Khanna appeared before the IJ to testify as to the merits of his claim. Khanna testified that he joined a political organization known as Akali Dal after graduating from college, and it was primarily his involvement in this organization, rather than his involvement in AISSF as he had previously asserted in his applications, that led to his persecution. Khanna testified to the arrest and beating which precipitated his flight from the Punjab region as well as his escape as detailed in his applications. Khanna also discussed the time he spent in Bombay and Nothick prior to leaving India for the United States, and the stops made in Bangkok and Brazil prior to reaching the United States as detailed in his applications. Khanna testified that if he returned to India, he would be killed, and

also testified that his father was killed shortly after Khanna reached the United States because of Khanna's activities and escape, a fact not included in either of his asylum applications. Khanna also testified that his wife and child would be killed if they returned to India and stated that his wife had been harassed several times and arrested four times after he left India. Khanna initially testified that he never returned to India after leaving for the United States, but later admitted that he did return to his hometown in India once after these events for his wedding. In an attempt to corroborate his claim, Khanna's wife testified (although she was not included on the witness list and therefore was not sequestered during Khanna's testimony), and Khanna submitted documentary evidence, including three letters from acquaintances of Khanna's.

After the hearing, the IJ denied Khanna's application for asylum and withholding of deportation. The IJ found that Khanna was not credible and had failed to meet his burden of proof. The IJ further noted that Khanna's attempts at corroboration through the presentation of the testimony of his wife as well as the documentary evidence failed to bolster his credibility. The IJ then examined in detail the shortcomings of the documentary evidence, the numerous inconsistencies present within Khanna's testimony and his applications, and inconsistencies between Khanna's account of relevant facts and the version to which his wife testified during the hearing. Finally, the IJ noted that the country report on India made no mention of current mistreatment of Sikhs in the Punjab region and further indicated that, to the extent that mistreatment or violence was occurring against any group of people in the Punjab area, such incidents appeared to have ended. The IJ further stated that even if Khanna's assertions were to be believed, his application for asylum would nonetheless fail because country conditions have substantially changed in the Punjab area

since Khanna left in 1993, and therefore Khanna would now be safe living in either the Punjab area or in some other part of the country. Accordingly, the IJ ordered Khanna's removal to India.

Petitioner appealed the IJ's decision to the BIA, arguing that the IJ erred in reaching an adverse credibility finding with respect to his claim due to the fact that he had offered documentary evidence in the form of letters as well as his wife's testimony as corroboration. The BIA affirmed the decision of the IJ with respect to its finding that Khanna had failed to adequately corroborate his claim and thus had failed to meet his burden of proof. The BIA noted that the letters submitted in support of Khanna's claim lacked sufficient detail and also that Khanna's wife's testimony was unhelpful both because she had not been sequestered and also because her testimony contradicted that of Khanna on several occasions. Khanna timely appealed the BIA's determination to this court and obtained a stay of removal from this court on March 19, 2004.

## II.

The BIA affirmed the IJ's decision on the basis that Khanna had failed to adequately corroborate his claim; thus, this case involves a credibility determination. Credibility determinations are considered to be findings of fact and are reviewed for substantial evidence. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). The BIA's other factual findings made in the context of denying the petitioner's application for relief are also reviewed under the substantial evidence standard. *Csekinek v. INS*, 391 F.3d 819, 821-22 (6th Cir. 2004). Under the substantial evidence standard, the BIA's decision must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal citation and quotation marks omitted). This court must affirm the BIA's decision unless the evidence "not only supports a contrary conclusion, but indeed compels it." *Csekinek*, 391 F.3d at

822 (internal citation and quotation marks omitted). Legal determinations made by the BIA are reviewed *de novo*. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004).

The BIA determined that Khanna had failed to meet his burden of proof by failing to adequately corroborate his claim. The BIA declined to pass explicitly on Khanna's credibility, likely because Khanna only appealed the IJ's adverse credibility finding to the extent that the IJ found that his claim had not been sufficiently corroborated by his wife's testimony and the letters. The BIA's finding that Khanna's testimony was not sufficiently corroborated may indicate that the BIA believed that Khanna's testimony was not adequately credible on its own, for if the BIA had found Khanna's testimony to be credible, corroboration may not have been required. 8 C.F.R. § 208.13(a); *see Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) ("An applicant for asylum is not required to produce corroborating evidence of persecution: the alien's own testimony can be sufficient to support an application for asylum[] where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.") (internal quotation marks and citation omitted). In contrast, where an applicant is less than credible, the applicant must present evidence to corroborate his claim. *See Gjinaj v. Ashcroft*, 119 Fed. Appx. 764, 771 (6th Cir. 2005). However, even if the BIA found Khanna's testimony to be credible, it may still have required corroboration in this case. This court has recently upheld the BIA's corroboration rule even in cases where an individual's testimony appears otherwise credible. This rule states that "'where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.'" *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting *In re S.M.J.*, 21 I. & N.

Dec. 722, 724-26 (BIA 1997)). In any event, the BIA's finding that Khanna had not adequately corroborated his claim is a credibility determination, which we must review for substantial evidence. *Yu*, 364 F.3d at 703.

On appeal, Khanna argues that, contrary to the BIA's finding, he adequately corroborated his claim through the submitted letters and his wife's testimony. Specifically, he contends that the BIA erred in finding that the letters offered in corroboration lacked sufficient detail because the BIA failed to specify what detail was missing. Khanna also argues that the BIA erred in holding that the testimony of Khanna's wife was inadequate due to the fact that she was not sequestered during Khanna's testimony because the rules of evidence do not apply in removal proceedings, and the government did not request that she be sequestered during Khanna's testimony.

An independent review of the letters submitted as well as Khanna's wife's testimony demonstrates that the BIA's findings were supported by substantial evidence. The first of these letters was submitted by Pritpal Singh Doabia, a member of the Akali Dal organization to which Khanna belonged in India. The second letter is from Amrik Singh Aliwal, a member of parliament. The third is from Baljinder Singh, a former member of the AISSF. As the BIA noted, the letters were quite perfunctory and lacked detail. All three letters are undated, state in general terms that Khanna had previously been mistreated for his beliefs, and summarily assert that he would be in danger if he returned. The letters do not discuss the particulars of Khanna's previous arrest and torture, nor do they mention the torture, beating, and death of Khanna's father, which Khanna alleges occurred shortly after he left India and was directly related to his escape. Such vague and conclusory assertions fail to provide any insight into the merits of Khanna's claim. Further, Baljinder Singh, who wrote one of the letters, had been living in the United States at the time of the

alleged persecution, thus making his account of Khanna's experience in India based on second-hand knowledge. Likewise, Khanna conceded at the hearing that Aliwal, who also authored one of the letters, had no first-hand knowledge of the events giving rise to Khanna's petition.

The BIA's conclusion that Khanna's wife's testimony failed to adequately corroborate Khanna's claim is also supported by substantial evidence in the record. The record reflects that Khanna's wife was not on the witness list and therefore was not sequestered during Khanna's testimony. Although Khanna's appellate brief is correct that the BIA is not bound by the rules of evidence, this objection misses the point. A witness's presence during the presentation of the applicant's testimony obviously diminishes the value of the witness's testimony for credibility purposes. Furthermore, substantial evidence supports the BIA's finding that the testimony which Khanna's wife did provide contradicted Khanna's testimony several times, notwithstanding the fact that she was present during his testimony. For example, while Khanna testified that his wife had been harassed and tortured on several occasions and arrested four times after he left India, Khanna's wife testified that while she had been taken to the police station several times for questioning, she had never been arrested. Further, although Khanna testified that his parents were forced to sell their house in order to send Khanna to the United States, Khanna's wife testified that she lived in that same house after Khanna left the United States and even "for some time" after Khanna's parents had died. Khanna's wife maintained that the house was not sold until after she had arrived in the United States.

Khanna claimed to have been persecuted for his involvement and leadership role in two Sikh organizations. Such claims do appear to be of the kind for which corroboration could be reasonably expected by the BIA. *See Dorosh*, 389 F.3d at 382-83 (upholding BIA's denial of an application

for asylum and withholding of deportation where the applicant failed to provide adequate corroborating evidence, despite the fact that the BIA found that there were no inconsistencies between the applicant's written application and testimony at the hearing).  In fact, as the IJ noted, in the course of Khanna's testimony, he identified several individuals who should have had personal knowledge of the events giving rise to Khanna's asylum application, but corroboration was not provided by any of these individuals in the form of testimony or other documentary evidence in support of Khanna's claim.  Furthermore, it is perfectly reasonable that Khanna's wife would be able to corroborate the events that gave rise to Khanna's claim of persecution, especially in instances where Khanna's testimony related specifically to events involving Khanna's wife herself.  Finally, the country report submitted along with Khanna's application does not lend support to Khanna's claim; to the contrary, the report fails to mention any current mistreatment of Sikhs in the Punjab area and indicates that previously problematic human rights abuses "appear[] to have ended."  The BIA's finding that corroborating evidence was required is especially reasonable in light of the numerous inconsistencies between Khanna's applications and testimony, indicating that Khanna's account of the events giving rise to his asylum claim may be less than credible.  Ultimately, Khanna's claim and supporting evidence are not of the quality which compels the conclusion that the BIA was in error.

**III.**

For the foregoing reasons, we affirm the BIA's decision and deny the petition for review.