**Diosdado NSUE–BISA, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–3927.

United States Court of Appeals, Sixth Circuit.

May 14, 2004.

Diosdado Nsue–Bisa, Knoxville, TN, pro se.

Blair O'Connor, Allen W. Hausman, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SUHRHEINRICH, GIBBONS, and SUTTON, Circuit Judges.

GIBBONS, Circuit Judge.

Diosdado Nsue–Bisa, a native and citizen of Equatorial Guinea, remained in the United States after his visa expired. The Immigration and Naturalization Service ("INS") commenced removal proceedings, and Nsue–Bisa applied for asylum, withholding of removal, and Convention Against Torture relief. Following a hearing, the immigration court concluded that Nsue–Bisa's testimony was not credible and denied his petitions for relief. Nsue–Bisa appealed the decision of the immigration court to the Board of Immigration Appeals ("BIA" or the "Board"), which affirmed the denial of relief. Before this court, Nsue–Bisa argues that he was denied the right to counsel during his immigration court proceedings, and he appeals the decision of the BIA. For the reasons set forth below, we affirm the decision of the Board.

## I.

Nsue–Bisa entered the United States on or about May 31, 1987, on a nonimmigrant visa that authorized him to stay in this country until June 14, 1988. His visa was

later extended until January 30, 1992. Nsue–Bisa remained in the United States beyond that date and was issued a Notice to Appear, which charged him with removal pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") for remaining in the United States for a time longer than permitted.

After proceedings commenced in October 1997, Nsue–Bisa conceded removability and applied for asylum, withholding of removal, and Convention Against Torture relief. On June 14, 1999, Nsue–Bisa's counsel filed a motion to withdraw from representation due to serious conflicts regarding payment for services. Nsue–Bisa agreed to his counsel's withdrawal, and the immigration court granted the motion.

On July 12, 1999, after a hearing where Nsue–Bisa appeared before the immigration court *pro se,* the immigration judge denied Nsue–Bisa's requests for relief. Among the reasons cited by the judge in his decision were that Nsue–Bisa was not credible based on inconsistencies between his testimony and his asylum application and that Nsue–Bisa did not have a well-founded fear that he could not return to any part of Equatorial Guinea without being persecuted. The immigration judge did grant Nsue–Bisa voluntary departure, which allowed him to leave the United States voluntarily on or before September 10, 1999. Nsue–Bisa appealed the decision of the immigration judge to the BIA. The Board specifically upheld the immigration court's adverse credibility finding and dismissed Nsue–Bisa's appeal. Nsue–Bisa filed a timely notice of appeal of the BIA's decision.

## II.

Before examining the merits of Nsue–Bisa's petitions for relief from deportation, we first address his claim that he was denied the right to counsel in the immigration court because he was not sufficiently advised that he had such a right at his hearing on July 12, 1999. "This court reviews *de novo* an alleged due-process violation based upon the manner in which an [immigration judge] conducts a deportation hearing." *Mikhailevitch v. INS,* 146 F.3d 384, 391 (6th Cir.1998).

■ Nsue–Bisa was advised of his right to acquire legal representation in writing and by the immigration judge multiple times before he elected to proceed *pro se* at his July 1999 hearing. In fact, Nsue–Bisa was represented by counsel until June 30, 1999, when the immigration court granted his counsel's motion to withdraw from representation due to conflicts regarding Nsue–Bisa's payment for services. When Nsue–Bisa appeared without counsel at a hearing on July 12, 1999, the immigration judge asked him if he was going to represent himself, to which Nsue–Bisa answered in the affirmative and told the judge that he was in court to "tell [his] story." Nsue–Bisa never asked the immigration court for a continuance in order to secure new counsel.

Nsue–Bisa voluntarily waived his right to have counsel on July 12, 1999, and, therefore, his immigration hearing did not proceed in violation of due process. *See Farrokhi v. U.S. INS,* 900 F.2d 697, 701 (4th Cir.1990) (noting that "[a]n alien can choose to waive counsel and such a waiver will be upheld if voluntarily given") (quotation omitted); *Choueib v. INS,* No. 88-3553, 1989 WL 45148, at *2 (6th Cir. May 4, 1989) (recognizing that alien can voluntarily waive right to counsel during deportation proceedings).

## III.

We next address the denial of Nsue–Bisa's petitions for relief from deportation. The INA gives the Attorney General dis-

cretion to grant asylum to persons qualified as refugees. 8 U.S.C. § 1158(b). A refugee is an individual who is unable or unwilling to return to the country of his or her nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42). An alien applying for asylum bears the burden of demonstrating that he or she is a refugee. 8 C.F.R. § 208.13(a). In reviewing decisions rendered by the BIA that an alien is not eligible for asylum, this court "review[s] the [immigration judge's] factual determination as to whether the alien qualifies as a refugee under a substantial evidence test." *Yu v. Ashcroft,* 364 F.3d 700, 702–03 (6th Cir.2004). Because an immigration judge's credibility determination is a finding of fact, we review that determination for substantial evidence and reverse only "if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

■ The BIA agreed with the finding made by the immigration judge that Nsue–Bisa did not meet his burden of establishing that he had suffered from past persecution because Nsue–Bisa lacked credibility. The immigration judge cited numerous instances of inconsistent testimony by Nsue–Bisa, including inconsistencies about the year of his mother's death and when he last had contact with the chief of security police in Equatorial Guinea. The judge also noted that Nsue–Bisa presented conflicting accounts of how he was treated by members of the security police. Finally, the immigration judge emphasized that Nsue–Bisa gave untrustworthy information about his father. Nsue–Bisa stated that his father received various appointments from the President of Equatorial Guinea in the early 1980s, including

that of deputy governor. But Nsue–Bisa also indicated that the same government nonetheless tortured his father, despite his service to the government. The immigration judge found that this unbelievable story further damaged the overall credibility of Nsue–Bisa's claims.

Nsue–Bisa presents no argument on appeal that persuades us to find that the immigration judge erroneously assessed his credibility. In short, in reviewing the immigration judge's adverse credibility determination of Nsue–Bisa, we cannot determine that "a reasonable adjudicator would be compelled to conclude to the contrary." *Id.*

Besides providing inconsistent testimony, the immigration judge cited various other reasons for finding that Nsue–Bisa did not suffer past persecution and does not have a well-founded fear of future persecution in Equatorial Guinea. For instance, Nsue–Bisa did not provide evidence to corroborate his testimony. Nsue–Bisa was the only individual to testify at the immigration hearing. He did provide affidavits of his former classmates, in which one classmate stated that he was aware that Nsue–Bisa was tortured in Equatorial Guinea. Another classmate attested to seeing Nsue–Bisa with a bandaged leg after hearing rumors that he had been tortured. These affidavits, however, fail to provide any first-hand knowledge that Nsue–Bisa was tortured. In addition, Nsue–Bisa did not provide a certified translation of a letter written by his father that Nsue–Bisa wanted to introduce at his hearing, and he did not authenticate photographs that he claimed showed injuries received from Equatorial Guinean authorities. While an alien is not required to submit corroborating evidence in support of his petition for asylum, *Perkovic v. INS,* 33 F.3d 615, 621 (6th Cir.1994), where an alien's testimony lacks credibility, and the

alien fails to present corroborating evidence, the BIA's decision to deny asylum should not be reversed. *See Gentchev v. INS*, 20 Fed.Appx. 342, 345 (6th Cir.2001); *cf. Perkovic*, 33 F.3d at 621 ("[A]n alien is not required to produce evidence of persecution; the alien's own testimony can be sufficient to support an application for asylum, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.") (quotation omitted).

The immigration court also rejected Nsue–Bisa's claim of future persecution because he could relocate to Nkimi–Niefang, a part of Equatorial Guinea where Nsue–Bisa lived for six years and often visited his grandparents. Nsue–Bisa's failure to substantiate the notion that he could not relocate to Nkimi–Niefang further supports our decision to uphold the immigration court's conclusion.

In sum, we conclude that Nsue–Bisa does not qualify for asylum. He primarily relies on his own testimony, about which the immigration judge made an adverse credibility determination that is supported by substantial evidence. Furthermore, Nsue–Bisa has failed to present any corroborating evidence in support of his petition that would compel us to reach a conclusion contrary to that of the Board. Because Nsue–Bisa has not established his eligibility for asylum, he also cannot meet the more stringent requirements for withholding of removal or Convention Against Torture relief. *See Yu*, 364 F.3d at 703 n. 3.

## IV.

For the foregoing reasons, we affirm the decision of the BIA.