NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0310n.06

No. 16-4182

**FILED**
Jun 07, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| OMAR CANJURA PEREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE:     COLE, Chief Judge; GIBBONS and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Omar Canjura Perez is a native and citizen of El Salvador who entered the United States decades ago, was first removed to El Salvador more than three years ago, reentered the United States, and is now subject to a second removal.  The immigration judge denied Canjura Perez's application for asylum, for withholding of removal, and for protection under the Convention Against Torture.  The Board of Immigration Appeals dismissed his appeal. Canjura Perez now seeks review in this court, arguing that he was denied a full and fair hearing in violation of due process because he was not given a sufficient opportunity to retain counsel, and that his removal violates the Convention Against Torture because, if removed to El Salvador, he is more likely than not to die at the hands of local gang members and with the acquiescence of Salvadoran police.  Neither argument succeeds.  Canjura Perez had ample opportunity to seek counsel and waived any remaining statutory privilege to retain counsel when he said he was

ready to proceed pro se. With respect to the Convention Against Torture, while Canjura Perez has argued that the Salvadoran police are indifferent to his being subject to extortionate gang threats, Canjura Perez has not demonstrated a sufficiently particularized threat of torture that he would face in El Salvador.

On February 2, 2016, the Department of Homeland Security commenced its second removal proceedings against Canjura Perez by serving him a new notice to appear. In response, Canjura Perez has sought asylum relief and withholding of removal, as well as relief under the Convention Against Torture.

At his initial appearance before the immigration judge on February 16, 2016, Canjura Perez was not represented by an attorney. The immigration judge informed Canjura Perez that he had "a right to be represented by a lawyer in this matter, at no expense to the United States Government," and further explained that if he wanted a lawyer, he would have to hire one, and that he would be given a list of organizations that may be willing to represent him "at either low cost or no cost." Canjura Perez stated that he understood that right, that he had received that list of organizations, and that he wanted the opportunity to find an attorney to represent him. The immigration judge therefore adjourned the hearing, instructing Canjura Perez to find a lawyer by February 23, 2016, one week later.

Very quickly, Canjura Perez secured Keith Ayers as his counsel. The day after that initial hearing, on February 17, 2016, Ayers filed a motion to appear telephonically at future hearings on Canjura Perez's behalf. Ayers appeared telephonically on February 23, 2016. Ayers informed the immigration judge that Canjura Perez conceded his removability, but sought relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture. The immigration judge rescheduled the hearing to allow Canjura Perez to file an

application for relief to that effect. Ayers filed the application on Canjura Perez's behalf, along with Canjura Perez's declaration, and other supporting documents.

For unclear reasons, however, Ayers's representation did not last. At the next hearing, on March 8, 2016, Ayers could not be reached by phone. The judge continued the hearing for another week, to March 15, 2016. The next day, on March 9, 2016, Ayers filed a motion to withdraw as Canjura Perez's counsel. Ayers explained that Canjura Perez had "informed" him of "his wishes to terminate representation" by telephone the day before. At the next scheduled hearing, on March 15, 2016, Canjura Perez appeared without a lawyer. Canjura Perez denied that he had expressed the desire to terminate Ayers's representation. The immigration judge therefore arranged for Ayers to join the hearing telephonically. Ayers explained over the phone that he had personally spoken with Canjura Perez's mother, that his "senior associate" had spoken to Canjura Perez, that Canjura Perez and his mother were "upset" that Ayers could not arrange for Canjura Perez to be released on bond, and that "they want[ed] a lawyer, but not necessarily" Ayers, and instead "another lawyer . . . somebody, possibly pro bono."

The immigration judge granted the motion to release Ayers and rescheduled the hearing for March 29, 2016, two weeks later, instructing Canjura Perez that "between now and then" he "need[ed] to get [him]self a new lawyer." Canjura Perez then indicated that he had contacted the Legal Aid Society of Cleveland for representation, but that he had been told that it would take "a month, a full month" for them to determine whether or not they would represent him. The judge replied, "I'm not going to give you a full month, I'm going to give you until March 29th."

On March 29, 2016, Canjura Perez appeared without a lawyer. Canjura Perez first told the immigration judge that he was represented by a lawyer "from Los Angeles," then suggested that that lawyer was Ayers, but when the judge explained that Ayers had withdrawn as was

explained at the previous hearing, Canjura Perez said that he had obtained another attorney. Later still, Canjura Perez stated that the Legal Aid Society decided not to represent him because he was not a resident of the area. He further stated that he had contacted seven of the listed providers of free legal services that was provided to him, but that they had all declined to represent him because he was not from the area.

The immigration judge rescheduled the hearing for almost three weeks later—April 18th—and encouraged Canjura Perez to find an attorney as early as possible, if he indeed wanted an attorney.

On April 18, 2016, Canjura Perez appeared without counsel and stated that he was not represented by counsel. He then affirmed that he was nevertheless ready to proceed with the hearing on his application for asylum, withholding of removal, and protection under the Convention Against Torture.

During the hearing, the immigration judge and the government attorney asked Canjura Perez about the basis for his fears of torture and persecution. Canjura Perez stated that he feared that he would be harmed in El Salvador because he served in the Salvadoran military in the 1980s, and because the new Salvadoran government is comprised of "the group of guerillas, the FMLN," that he fought as a member of the Salvadoran military. Canjura Perez therefore feared that the Salvadoran government would "take reprisals" against him and "harm" him. But Canjura Perez also stated that he did not hold rank in the military, that he "was not in direct combat" but was rather "patrolling" and "protecting the military base," and that he did not cause anyone's death during his time in the military. Canjura Perez further stated that during the eighteen months that he lived in El Salvador in 2014 and in 2015, the Salvadoran government

never tried to harm him. Canjura Perez could not give an example of anyone who had been tortured in the past five years because of their service in the military in the 1980s.

Canjura Perez also stated that the gang members used force to extort money from him when he was working as a taxi driver in El Salvador in 2015, and that he feared they would further harm him if he returned. He recounted one instance when, after he skipped work as a taxi driver for two days, the gang members found him at his home, threw him onto the ground, pointed a gun at his head, and threatened to kill him if he continued to skip work. Canjura Perez elaborated that he then went to the police, but that the police officer recommended against pressing charges because if Canjura Perez did so "they're going to kill you," and further recommended that he buy a gun to defend himself. Canjura Perez explained that the gang had not targeted him specifically, but rather, "every business in El Salvador pays the extortion, stores, pharmacies, funeral homes, everybody pays the extortion." Non-business-owners are also subject to "assaults [and] thefts." Canjura Perez confirmed that he was extorted not based on his "religion," "race," or his membership in "a group that they think are different."

The immigration judge denied relief to Canjura Perez. Construing Canjura Perez's asylum application "to be based on two [concerns]," the immigration judge first addressed Canjura Perez's fear of harm based on his military service in the 1980s. The judge denied relief based on that concern because Canjura Perez said himself that he had lived eighteen months in El Salvador in 2014 and in 2015 without being harmed for that reason. The judge denied relief, too, based on Canjura Perez's second concern that he would suffer continued harm from Salvadoran gang members. The judge explained that the extortion that Canjura Perez had suffered in El Salvador was not based on his race, religion, nationality, political opinion, or membership in a particular social group, and that there was insufficient evidence that Canjura Perez would be

tortured in El Salvador, "either by the government or by someone else with the acquiescence of the government." To succeed under the latter theory, Canjura Perez needed to show that "the government of El Salvador, knowing that [Canjura Perez was] about to be tortured, would thereafter willfully turn a blind eye and allow that torture to happen," and the judge determined that the evidence simply "d[id] not demonstrate that that's the case." Canjura Perez expressed his intent to appeal that decision.

One week after that hearing and decision, Garish Sarin entered his appearance for Canjura Perez. Sarin represented Canjura Perez at the Board of Immigration Appeals and continues to represent him here.

With Sarin's help, Canjura Perez argued to the Board of Immigration Appeals that the immigration judge had erred in two ways. First, Canjura Perez argued that he was deprived of a full and fair hearing, because he was not given a sufficient opportunity to be represented by counsel, and because with counsel he would have successfully argued that he was and would be targeted for his membership in a particular social group. Second, Canjura Perez argued as his theory for protection under the Convention Against Torture that he would more likely than not be killed by gang members if returned to El Salvador, that the Salvadoran police would acquiesce in that killing, and that that killing was torture under the Convention Against Torture. Canjura Perez did not pursue his direct claims for relief for asylum and for withholding of removal based on the harm he feared he would suffer as a result of his military service in the 1980s.

The Board "adopt[ed] and affirm[ed] the Immigration Judge's decision." The Board explained that Canjura Perez had not made out a case for asylum or for withholding of removal, both below and in front of the Board, for two reasons. First, Canjura Perez had failed to

articulate the social group to which he belonged and which prompted the alleged persecution. Second, to the extent that Canjura Perez was asserting that the targeted social group to which he belonged was "related to his fear of extortion by the [Salvadoran] gang," no such group could be established, as the Board had previously held that "the individuals in a group of those who resist gang activity cannot be distinguished from other individuals in society who also refuse to cooperate with the gangs or with other criminal organizations." For the claim of protection under the Convention Against Torture, the Board explained that Canjura Perez had not demonstrated a particularized threat of torture because the harm that he did suffer in El Salvador "was perpetrated by gangs motivated by extortion" and because Canjura Perez had not shown "more than speculative[ly]" that the gangs would indeed torture him if he did not submit to their extortion. The Board also determined that Canjura Perez was not denied a full and fair hearing in violation of due process because the immigration judge had granted Canjura Perez "a reasonable and fair opportunity to obtain counsel" and because Canjura Perez had in any event "indicated that he was prepared to testify without representation."

On petition for review to this court, Canjura Perez presses the same two arguments: that he was denied due process by his lack of representation at the merits hearing and that he had proven with substantial evidence that if returned to El Salvador he more likely than not would be killed by gang members, with the acquiescence of Salvadoran police.

Canjura Perez's procedural rights were not violated because he was given sufficient opportunity to obtain counsel, and because he waived any remaining statutory privilege he had to be permitted more time to obtain counsel.

Canjura Perez was afforded sufficient opportunity to obtain counsel. After being served on February 2, 2016, with a notice to appear, Canjura Perez had two weeks to find counsel for

his first hearing on February 16, 2016. When Canjura Perez appeared without a lawyer at the hearing, even though he affirmed that he had received a list of counsel who had expressed a willingness to represent immigrants like Canjura Perez at low cost or no cost, the judge provided an additional week for Canjura Perez to find counsel. Canjura Perez was thereafter represented by counsel, and that counsel helped Canjura Perez prepare his application for relief, along with his declaration and other supporting documents. Although Canjura Perez and that first counsel parted ways, the immigration judge thereafter gave Canjura Perez a total of five additional weeks to find new counsel.

This amply met the relevant Immigration and Nationality Act provision granting respondents the "privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as [they] shall choose," 8 U.S.C. § 1362, and requiring only that a respondent to "be permitted the opportunity to secure counsel," to be given "lists . . . of persons who have indicated their availability to represent pro bono" these respondents, and to be given at least "10 days after the service of the notice to appear" to retain counsel from that list or through other means. 8 U.S.C. § 1229(b)(1)–(2).

In any event, Canjura Perez waived any remaining statutory privilege he had to seek counsel when he expressed readiness to proceed pro se. A respondent in removal proceedings may waive the privilege to seek counsel and proceed pro se if the waiver is voluntary. *Nsue-Bisa v. Ashcroft*, 98 F. App'x 436, 438 (6th Cir. 2004). After repeated continuances, on April 18, 2016, when the immigration judge asked Canjura Perez if he was represented, Canjura Perez replied he was not, and when the immigration judge asked Canjura Perez if he was ready to proceed, Canjura Perez nevertheless replied that he was, without reservation and without any

suggestion that he wanted additional time to find counsel. Canjura Perez therefore voluntarily waived any unsatisfied statutory privilege to seek counsel.

The immigration judge also complied with general due process requirements for such proceedings. While due process of law requires that respondents in removal proceedings "be afforded a full and fair hearing," *Mapouya v. Gonzales*, 487 F.3d 396, 415–16 (6th Cir. 2007) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 290 (6th Cir. 2005)), respondents "are not 'entitled' to the presence of counsel under the Sixth Amendment" "because the proceedings are civil and not criminal in nature." *Pergjoni v. Holder*, 311 F. App'x 892, 896 (6th Cir. 2009). Canjura Perez had over a month to obtain counsel, and he has not shown that he was deprived of a fair and full trial. His due process challenge therefore fails.[1]

Canjura Perez has not shown, either, that if returned he is more likely than not to be tortured by gang members, with the Salvadoran police's acquiescence. For protection under the Convention Against Torture, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The threat of torture must be a "particularized threat of torture," rather than a general one. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003)). Canjura Perez argues that death, with which he testifies he was once threatened, is torture. Assuming without deciding that death is torture under the Convention Against Torture, Canjura Perez has not established with his testimony that it is more likely than not that the Salvadoran gang members would kill

---

[1] The Board of Immigration Appeals also rejected Canjura Perez's due process claim on the alternative ground that he could not show prejudice. Prejudice is required in such claims. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). The Board reasoned that Canjura Perez did not articulate a targeted social group and that he could not articulate one based on his fear of extortion by the Salvadoran gang. Indeed, Canjura Perez's counsel does not indicate to us the social group that a lawyer could have successfully presented to the immigration judge. However, because Canjura Perez has not shown an error in his proceedings, we need not address whether the alleged error substantially prejudiced him.

him if he did not pay extortion. Indeed, Canjura Perez admitted that the gang members had nothing against him specifically, that they targeted "every business in El Salvador" and that they subjected even non-business-owners to "assaults, thefts." Reviewing the agency's factual determination for substantial evidence, *see Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004), a reasonable adjudicator would not be compelled to find the opposite, *see* 8 U.S.C. § 1252(b)(4)(B): that Canjura Perez had shown a "particularized threat" that gang members would more likely than not kill him if he returned to El Salvador.

We deny Canjura Perez's petition for review.